## Plumer & Crary *versus* Reed.

*Consideration of Contract.——Resulting Trusts and Trusts ex maleficio.*

Where one surrendered his title under articles of agreement, to certain woodland, in consideration of a promise to convey to him ten acres thereof, the surrender was a valuable consideration for the conveyance, and the facts, if found by a jury, were evidence of a resulting trust in his favour: nor was it decisive against him that he has paid but little on the articles of agreement, and was liable to be turned out of possession.

ERROR to the Common Pleas of *Clarion county.*

This was an action of ejectment brought by Samuel F. Plumer and Frederick G. Crary, for the use of Frederick G. Crary, against John L. Reed, for twenty-two acres of land in Licking township.

The case was this:—In 1837 Mrs. Curwin entered into articles of agreement with Henry Neely, for the sale of 216 acres of land. Some time during the same year Neely agreed to sell John L. Reed one end of this tract, containing about 116 acres, under which agreement Reed paid $5, and went into possession, built a house and stable on it, cleared a portion of the land, and is still in possession.

The greater portion of the tract being woodland, Plumer & Crary, who were carrying on the Buchanan Furnace, endeavoured to buy it from Neely, who could not sell, in consequence of his agreement with Reed, who demanded $300 for his interest in the property. An arrangement was at length made in 1848, under which Reed cancelled his contract with Neely, and gave one to plaintiff for the 116 acres, under a parol promise by them that they would give him a deed for the ten acres on which his improvements had been made, as soon as they had obtained one from their vendor. Reed remained in possession of the ten acres, and in 1849 accepted an article of agreement from Plumer & Crary for twelve acres more of the same tract, but without saying anything of the piece occupied by him.

Some six or eight years ago, Plumer & Crary cut the property up into small lots, but declined to make Reed the deed for the ten acres above mentioned, and brought this ejectment for them, and for the twelve which he claimed to hold under the above-mentioned agreement.

The defendant resisted the plaintiffs' claim, on the ground that under the above state of facts, they were trustees for him; that a resulting trust for his benefit was created, by the giving up of his interest, and the plaintiffs' promise to make him a deed when they should have acquired a legal title.

The case was tried twice.

On the first trial, the jury found in favour of the plaintiffs the twelve acres embraced in the articles of agreement, to be released

[Plumer & Crary *v.* Reed.]

on payment of $137.07, with interest, on or before October 1st 1859, and the residue of the land they found for defendant. This was followed by a motion for a new trial, and plaintiffs' payment of $154.77, the debt, interest, and costs on the conditional verdict.

On the 28th of March 1860, the motion for a new trial as to the ten acres was granted, and on the 30th of August 1860, the jury were sworn. Under the above state of facts, the court below charged the jury as follows:—

" Whatever the value of the defendant's improvements may have been, it is very evident they formed no part of the consideration which the plaintiffs were to give Neely on their purchase; they paid him, and the defendant took their promise for the ten acres, and it is not easy, therefore, to perceive how a trust can result from such a mere naked, but violated promise ; certainly none more than could arise from any verbal contract which would conflict with the Statute of Frauds and Perjuries. If Reed's improvements or any payments he might have made on his own contract with Neely had formed the consideration of the purchase by the plaintiffs from Neely, the law might be otherwise, but such was not the case. The law is therefore with the plaintiffs, and if the jury believe the facts as testified to, the verdict will be for them."

To which charge the defendant's counsel excepted, and at their request this bill of exceptions was sealed.

The jury found in favour of plaintiffs, and judgment having been entered on the verdict, the defendant sued out this writ and assigned here for error :—

1. That the court erred in ruling that the defendants in error did not take and hold the title obtained from Neely for the land in controversy, as trustees by operation of law.

2. In instructing the jury that " it is not easy, therefore, to perceive how a trust can result from such a mere naked, but violated promise; certainly, none more than could arise from any verbal contract which would conflict with the Statute of Frauds and Perjuries."

3. In saying, " If Reed's improvement or any payments he might have made on his own contract with Neely had formed the consideration of the purchase by the plaintiffs from Neely, the law might be otherwise, but such is not the case. The law is, therefore, with the plaintiffs, and if the jury believe the facts as testified to, the verdict will be for them."

4. In not instructing the jury,—if the facts were believed, to find for the defendant, and

5. In not leaving it to the jury to say whether, from all the

facts disclosed in the case, a trust did not result in favour of the defendant below.

*Campbell & Lamberton,* for plaintiffs in error, as establishing the doctrine of a resulting trust, under similar circumstances, cited and relied on Beck's Executors *v.* Graybill & Swartly, 4 Casey 66; Fillman *v.* Divers, 7 Casey 429; McCulloch *v.* Cowher, 5 W. & S. 427; Boyd *v.* McLean, 1 John Ch. R. 582; Story Eq. §§ 1201, 1210; German *v.* Gabbald, 3 Binn. 302.

If defendants in error did not intend to purchase in trust for Reed as to the ten acres, they obtained it in fraud, and are trustees *ex maleficio:* Sheriff *v.* Neal, 6 Watts 540; Hoge *v.* Hoge, 1 Watts 163; McCulloch *v.* Cowher, 5 W. & S. 450; Miller *v.* Pearce, 6 W. & S. 97; Kellum *v.* Smith, 9 Casey 165; Lynch *v.* Cox, 11 Harris 268.

*George W. Lathy,* for defendants in error, cited and relied on Robertson *v.* Robertson, 9 Watts 32; Haines *v.* O'Conner, 10 Watts 313; Fox *v.* Heffner, 1 W. & S. 379; Jackman *v.* Ringland, 4 W. & S. 150; Barnett *v.* Dougherty, 8 Casey 372.

The opinion of the court was delivered, January 8th 1861, by

WOODWARD, J.—This case resembles in some of its features that of, McCulloch *v.* Cowher, 5 W. & S. 427, and was quite as fit to be submitted to the jury on the question of a resulting trust. If the jury had been satisfied from the evidence, that the plaintiffs induced Reed to surrender his article of agreement, and to facilitate their acquisition of title to the whole tract, by promising him a conveyance of the ten acres now in dispute, a trust *ex maleficio* would arise in his favour as to the ten acres. Equity will not permit one to hold a benefit which he has derived through the fraud even of another, and much less will it do so if he has acquired it by means of his own fraud: Sheriff *v.* Neal, 6 Watts 540.

It is not decisive against Reed that he had paid very little on his contract; that he had been backward in perfecting his equity, and that he was liable to be turned out of possession. He still held an equitable interest, coupled with the actual possession. He had an estate in the land. Plumer & Crary were iron-masters, and wanted the wood on the land for their furnace, and very likely preferred to extinguish Reed's equities speedily by inducing him to surrender them, rather than buy in the paramount title, and wait for the slow results of the law. Did they extinguish them by the promise of the ten acres? That is the question of fact in the case; for if they did, it would be highly inequitable in them to turn Reed out of the possession of these very acres. Reed was entitled to have the legal title on complying with his contract, and if he surrendered his position to the

[Plumer & Crary *v.* Reed.]

plaintiffs on the terms alleged, it was a valuable consideration for their agreement, and their action brought in disregard of their promise ought not to be sustained.

The action seems to have been brought for 22 acres, including, I suppose, the 12 acres for which the defendant took an article of agreement from the plaintiffs in 1849. But the question discussed and decided, related only to the 10 acres which Teats swears he ran off for Reed by Crary's direction, and in his presence. If Reed have not paid for the 12 acres according to his contract, the plaintiffs have a right to turn him out of that part; but the 10 acres he would have the right to hold, if the jury should find the facts alleged.

For not submitting the evidence of those facts to the jury, the judgment is reversed, and a *venire facias de novo* is awarded.