# Kistler's Appeal.

1. A sheriff's sale is made against the will of the defendant, and he has no control of the direction the title is to take, and if there be no fraud practised by the bidder, the defendant can obtain a title only by repurchase.

2. Saeger's property being to be sold by the sheriff, he consulted with German, Kistler and others, and it was understood that Kistler should purchase for his benefit. At the sale Kistler was absent, the property was struck down to German for the benefit of Saeger at its full value, and at Saeger's request deed made to Kistler, who paid the money, he agreeing to hold it for Saeger that he might have a home. Saeger was insolvent and continued to be unable to refund the money. *Held*, not sufficient to make Kistler trustee *ex maleficio* for Saeger.

3. Such agreement is within the Statute of Frauds and cannot be enforced.

4. The evidence to establish a resulting trust, especially one *ex maleficio*, should be clear, explicit and unequivocal.

[Kistler's Appeal.]

March 20th 1873.    Before READ, C. J., AGNEW, SHARSWOOD and MERCUR, JJ.  WILLIAMS, J., at Nisi Prius.

Appeal from the Court of Common Pleas of *Lehigh county:* In Equity, No. 148½, to July Term 1872.

On the 9th of July 1868, Joseph Saeger and Maria his wife filed a bill against Samuel J. Kistler.    The bill set out:

1, 2. Joseph Saeger on the 20th of December 1858, owned a house and lot in Allentown, and on that day the premises were sold by the sheriff under an execution against Saeger for $1200 ; subject to a mortgage, &c.

3, 4. Before the sale, the plaintiffs had agreed with a number of their creditors that the premises should be purchased at sheriff's sale by Nathan German, one of the creditors, and that in pursuance of the agreement the property was struck off to German for $1200, " subject to the said conditions."

5, 6. After the sheriff's sale and upon the same day, German agreed with Kistler, the defendant, that Kistler should be substituted as purchaser instead of German, on the condition that the title should be held by Kistler for the benefit of the plaintiff; Kistler was so substituted and agreed so to hold the title, that upon the payment by the plaintiffs of the yearly interest upon the purchase-money and of the principal sum $1200, he would convey the property to them.

7. In accordance with those arrangements, the plaintiffs entered into possession of the property and made valuable improvements at a cost of $1035 ; paid the taxes on the property, interest on the purchase-money and on the mortgage, subject to which it was sold.

8. The plaintiffs occupied the property until the 3d of April 1865, when they were notified by the defendant Kistler to deliver possession to him, " and thereupon compelled them to quit and deleliver up possession as aforesaid."

9. Since April 3d 1865, the defendant had the sole use of the property ; received rents to the amount of $1000, and has refused to account to them ; and although plaintiffs were willing to pay him the purchase-money and do all required by the agreement between the defendant and German, the defendant refused to convey to them.

The prayer was that the defendant should be decreed specifically to perform the agreement; to hold the property in trust for the plaintiffs and give them possession ; they offering to perform their part of the agreement and pay the purchase-money and interest, &c.

The defendant answered :—

1. He admitted the allegations of this paragraph of the bill.

2. He bought the property at sheriff's sale December 20th 1858, and paid from his own money $1200, the purchase-money,

and a deed was delivered to him by the sheriff January — 1859; he afterwards paid $990.40, the amount of the lien which remained on the property, with the interest which had accrued on it.

3, 4, 6. He denied the allegations of these paragraphs.

5. He denied the allegations of this paragraph, and averred, that prior to the sale he intended to purchase the property if not sold for more than it was worth, and to make arrangements satisfactory to himself for the occupancy of the property by the plaintiffs; when defendant came to the sale, the property had been struck down to German, who on being informed of defendant's intention, allowed his name to be substituted as purchaser, and defendant was in consequence returned by the sheriff as purchaser; he never entered into any agreement with plaintiffs to convey the property to them; but his intention to purchase was merely from friendly feelings to the plaintiffs. After receiving the deed, he verbally agreed with the plaintiffs that they should occupy the property at a rent equal to $148.01, being interest on the cost to the defendant, taxes and repairs to be paid by plaintiffs, who were in possession at the time of the verbal agreement and so remained until April 1st 1865; plaintiffs paid part of the taxes and paid $546.53 on account of rent; they gave up possession in pursuance of the notice and without further action; they removed part of the improvements they had put upon the property, and about June 7th 1865, presented a claim of $1035 to defendant for taxes, improvements, &c.

7. Plaintiffs did not *enter* into possession in accordance with any arrangement alleged in this paragraph, but they remained in possession under the verbal agreement above mentioned. Defendant had no knowledge of the improvements made by plaintiffs, but such as were made were for plaintiffs' own benefit without the consent of defendant, some were useless and an injury. Plaintiffs paid no interest except what was paid as rent, and a large amount is still unpaid.

8. No further compulsion than the notice to quit was used to cause the plaintiffs to leave the property.

9. Defendant has received rent since the plaintiffs left, but is not bound to account to plaintiffs for it.

A replication was filed, and William H. Glace, Esq., appointed examiner and master.

A large amount of testimony was heard before the examiner, which he returned to the court, and as master, he reported a decree that the plaintiffs' bill be dismissed.

On exceptions by the plaintiffs, the court (Longaker, P. J.) held that the evidence established a resulting trust, and the whole matter was again referred to the master, with instructions to state an account between the plaintiffs and defendant, &c., and to report a form of decree in accordance with the opinion of the court.

[Kistler's Appeal.]

The master again reported, presenting a form of decree as directed by the court.

Exceptions were filed by the defendant to the second report.

After argument the exceptions were overruled and the court decreed: "That the defendant execute and deliver to the plaintiffs a good and sufficient deed in fee simple for the house and lot in controversy, within fifteen days after the plaintiffs shall have paid to the prothonotary of the Common Pleas of Lehigh county the sum of $3918.87, with interest from April 1st 1872, subject to the order of the defendant, and that the plaintiffs notify the defendant of said payment, and that the defendant pay the costs."

The facts of the case are so fully set out in the opinion of the Supreme Court that no other statement of them is required.

The defendant appealed to the Supreme Court, and assigned the decree for error.

*C. M. Runk* and *Thompson*, for appellant.—The case is within the Act of April 22d 1856, sect. 4, Pamph. L. 533, 1 Br. Purd. 724, pl. 3, and is ruled by Barnet *v.* Dougherty, 8 Casey 371. If there be nothing more than the violation of a parol agreement, equity will not decree a purchaser to be a trustee: Williard *v.* Williard, 6 P. F. Smith 119; Kellum *v.* Smith, 9 Casey 164; Jackman *v.* Ringland, 4 W. & S. 149. A parol agreement to purchase land and convey on payment of advances is void: Myers *v.* Byerly, 9 Wright 368. A purchaser at sheriff's sale can be held trustee only on the ground of fraud: Haines *v.* O'Conner, 10 Watts 313; Merritt *v.* Brown, 6 C. E. Green 402; Sample *v.* Coulson, 9 W. & S. 62; Brown on Fraud, sect. 94.

*E. J. More* and *Woodward*, for appellees.—Wherever a person obtains a title from another through a confidence reposed in him, which he could not have obtained except by such confidence, if he abuse such confidence he is converted into a trustee *ex maleficio:* Hoge *v.* Hoge, 1 Watts 163; Sheriff *v.* Neal, 6 Id. 534; McCullough *v.* Cowher, 5 W. & S. 427; Miller *v.* Pearce, 6 Id. 97; Morey *v.* Herrick, 6 Harris 123; Plumer *v.* Reed, 2 Wright 46; Church *v.* Church, 1 Casey 278; Beegle *v.* Wentz, 5 P. F. Smith 369; Lingenfelter *v.* Richey, 8 Id. 485; Seichrist's Appeal, 16 Id. 237.

Where one procures a conveyance to be made to him, upon the promise and assurance that he will hold it in trust for another, and refuses to carry out such promise, it is a fraud; *and because of the fraud* the vendee is a trustee *ex maleficio:* Hill on Trustees 224, 225; Thompson *v.* White, 1 Dallas 424; Gilbert *v.* Hoffman, 2 Watts 66; McCullough *v.* Cowher, 5 W. & S. 430; Jackson *v.* Summerville, 1 Harris 359.

[Kistler's Appeal.]

The opinion of the court was delivered, May 17th 1873, by
AGNEW, J.—The finding of the master, who had also been the
examiner in this case, was against the plaintiffs upon every mate-
rial fact alleged in their bill, and his clear conclusion was that
there was no trust on part of the defendant, on any ground.
Exceptions being taken to these findings of fact, the court below,
rejecting the report, found the facts for themselves.    The opinion
of the judge evinces a mind favorably impressed by the evidence
in behalf of the plaintiffs.    His statement may be regarded,
therefore, as exhibiting the entire strength of their case.    It is as
follows:—" That in December 1858 the real estate in question
was to be sold at sheriff's sale; that Joseph Saeger, a deaf mute,
one of the defendants in the execution, and now one of the plain-
tiffs to this bill, was desirous, prior to the sale, to secure the pur-
chase of it, so that it might eventually enure to the benefit of his
wife; and in order to effectuate his desire, he called on Mr.
German, Christian Pretz and Samuel J. Kistler, and that as the
result of his conferences, it was understood that the defendant
would so purchase, and that Mrs. John Saeger, an aunt of the
plaintiff to this bill, would also assist by furnishing some money.
German attended the sale, fully believing that an arrangement ex-
isted by which Kistler was to buy; but not finding Kistler at the
sheriff's sale, he bought for the benefit of the plaintiffs, and so in-
formed A. L. Ruhe, who was also bidding on the property.    Ger-
man became the purchaser, and signed the conditions of sale;
but before the down-money was paid, at the instance of Joseph
Saeger, Kistler was substituted, by an agreement between him
and German, at the sheriff's office, by which Kistler should take
and hold the property for the plaintiffs, so that they should have
a home; that if Kistler had not agreed to hold for the plaintiffs'
use, German would not have allowed him to succeed to his pur-
chase; that the property brought its market value at the sheriff's
sale, and has since greatly appreciated; and that after Kistler
received the deed, Joseph Saegar and wife continued in the pos-
session of the property and made important repairs and altera-
tions; that the property was assessed in the name of Maria
Saeger, and continued to be assessed in her name until 1864, and
that the taxes were paid by the plaintiffs, and that interest on the
amount of the purchase-money paid by Kistler, and the interest
on the liens were paid by the plaintiffs until the year 1862, which
in some receipts is called rent, and the others, interest; that about
January 1864 the plaintiff, Joseph Saeger, was notified by Kistler
to leave the premises, there having been served a landlord's notice
to quit.    The plaintiff surrendered the possession, and subse-
quently made several demands, by presentation of bills to the de-
fendant, as a compensation for repairs made.    " These facts (says
the judge) clearly establish a resulting trust, and the defendant,

Samuel J. Kistler, will be treated as a trustee *ex maleficio* of the plaintiffs." We cannot assent to this conclusion. These facts establish only a judicial sale *in invitum* as to Saeger, struck down to German, who paid no money, and that Kistler stepped into his place, paid the bid, and took the deed upon a parol agreement to hold the property for the benefit of the plaintiffs, so that they might have a home. · It is wholly unlike those cases where one receives a conveyance without consideration or purchase, in confidence that he will hold it for another. A sheriff's sale is made ·against the will of the defendant, and he has no control over the direction the title is to take. If no fraud at the sale be practised by the bidder, the defendant in the writ can obtain a restoration of his title only by a contract of repurchase. That such an agreement to repurchase or to redeem, as is found by the judge, is within the Statute of Frauds and Perjuries, and could not be enforced even before the passage of the Act of 22d April 1856, is attested by abundant authority. The case of Fox *v.* Heffner, 1 W. & S. 372, is a counterpart of this in every respect, if, indeed, it is not stronger, as Morris, who took the place of Patterson at the sheriff's sale, repeatedly acknowledged the right of Heffner to redeem his land on payment of the money. " The plaintiff below (said Judge Sergeant) claims the land under a parol agreement between him and Morris, one of the defendants, made at the time when the sheriff's deed conveyed the land to Morris." After stating that such an agreement is within the Statute of Frauds and Perjuries of 1772, he says : " It is now settled by repeated decisions of this court that if one buys the defendant's property at sheriff's sale, and verbally agrees to hold it in trust for the defendant, with a right of redemption in the defendant within a limited period, it is a contract resting in parol merely, and not transferring any title in the land. In Kisler *v.* Kisler, 2 Watts 327, and Robertson *v.* Robertson, 9 Watts 42, it was determined that unless there is in the transaction more than is· implied from the mere violation of a parol agreement, equity will not decree the purchaser to be a trustee. In Haines *v.* O'Conner, 10 Watts 320, these cases are recognised, and it is laid down that a purchaser at sheriff's sale, who has paid his own money, can be held a trustee *ex maleficio* only on account of the existence of fraud, and when that is the case, he is a trustee for the creditors and the debtor also, unless the debtor be *particeps criminis*. In the case before us there is no evidence of any collusion or act of fraud on the part of Morris, in the purchase of the property which could make him a trustee *ex maleficio*, and the fraud which may be alleged to exist in the mere violation of an agreement is no more than that which attends every violation of an agreement." This language is so applicable to the case of Kistler, I have transcribed it in lieu of my own. Here Kistler was not present at the sheriff's sale, and committed no act of

fraud, but merely took German's place at the instance of Saeger, and paid his own money upon an agreement to suffer Saeger to redeem. The following cases are to the same effect: Leshey *v.* Gardner, 3 W. & S. 314; Jackman *v.* Ringland, 4 Id. 149; Sample *v.* Coulson, 9 Id. 62. The case is made still stronger against the plaintiffs by the Act of 22d April 1856, the fourth section of which provides that "all declarations or creations of trust or confidences of any lands, tenements or hereditaments, and all grants and assignments thereof, shall be manifested by writing, signed by the party holding the title thereof, or by his last will in writing, or be void." This case is ruled by Barnet *v.* Dougherty, 8 Casey 371, and Kellum *v.* Smith, 9 Id. 158. Both in the court below and here, it has been said the trust arose *ex maleficio*, though nothing of the kind is found in the evidence; yet, as this has led to an inquiry into the conduct of German, who bid off the property at the sale, it will be proper to refer to this aspect of the case. But how can that question arise? The bill is filed against Kistler alone, and is founded wholly on his agreement to hold the property for the plaintiffs. No averment is made of fraud in the purchase at sheriff's sale, by German or Kistler, or that the property was bought at an undervalue. Neither the judge below, nor the solicitors of the plaintiffs, in their statements of the case, place it on the ground of fraud in the sale. The facts as proved disclose no fraud. German was under no promise to buy for Saeger, and did not go to the sale for that purpose. He went as a lien-creditor, to protect his own interests, but finding neither Kistler, nor Saeger, nor his friends there, he bid himself, with the intention of securing the property for Saeger, an intention communicated to Saeger immediately after the sale, and fairly carried out. Ruhe, a bidder also, asked him when bidding, whether he wanted the property for himself. He replied, he wanted it for Joseph Saeger. "Then," said Ruhe, "I won't bid any more." This is German's own account of the matter. Elisha Forrest testifies that before the property was knocked down, German said he was bidding, and wanted to buy the property for the benefit of Joseph Saeger. This was all he said. No unfairness is imputed to German, and none is alleged against the sale, or is found by the master or the court. The evidence shows, and the court found as one of the facts, that the property brought its market value at the sheriff's sale. There is nothing in the case, therefore, which would authorize us to shift the position the plaintiffs have assumed in their bill, and to treat this as a trust *ex maleficio*, arising out of German's conduct. Clearly no fraud was intended; his purpose was fair; and no injury was done either to creditors or to the defendant. Whatever supposed benefit he might have derived from the sale, he suffered to pass over to Kistler without consideration and for Saeger's benefit. The evidence to

[Kistler's Appeal.]

establish a resulting trust, especially one arising *ex maleficio*, which is an imputation of fraud, should be clear, explicit and unequivocal: McGinity *v.* McGinity, 13 P. F. Smith 38; Nixon's Appeal, Id. 279; Lingenfelter *v.* Richey, 12 Id. 123.

Nor is there anything in the conduct of Joseph Saeger which invokes equity in his behalf. He admits that he was insolvent at the time of the sale, and unable to refund the money, and has so continued. Mrs. John Saeger, who was to have assisted him, soon after the sale, refused to do so, and Kistler was obliged to give his own bond, with surety, to pay off her mortgage. Joseph Saeger occupied the property for years, and failed to pay all his rent. When notified by Kistler, as landlord, to quit possession, he did so, and then presented to him a large bill for repairs, materials and taxes, and finally did not file this bill for more than three years after he had surrendered possession, and more than nine years after the sheriff's sale.

Upon a full review of the case, we can discover no equity to support the plaintiffs' bill. The decree of the Court of Common Pleas is therefore reversed, and the bill of the plaintiffs is dismissed, and they are ordered to pay the costs.