## McCloskey, Appellant, *v.* McCloskey.

*Trusts and trustees—Will—Parol trust—Act of April 22, 1856, P. L. 532 —Resulting trust.*

The mere broken promise of a trustee under a trust created by parol, who had agreed to carry it out, cannot, without more, be held sufficient to create a trust by implication within the exception of the Act of April 22, 1856, P. L. 532.

Unkept promises, declarations or misrepresentations which will create trustees ex maleficio must be made before, or at the time the legal title is acquired, or the devise made.   Nothing subsequently said by a grantee or devisee will turn an estate that had passed absolutely from the grantor or testator into a trust for others.   The land of a grantor or testator, who alone can impress it with a trust, never passes from him so impressed unless the impress is in writing, or he is induced at the time of his conveyance or devise to make it by reliance upon the pledged faith of his grantee or devisee, subsequently broken, that his express wishes will be carried out.

Where a testator executes a will by which he devises practically his whole estate, upon the death of his wife, to his three daughters and it does not appear that he was induced to do so by any promises, misrepresentations, artifice or fraud practiced upon him by his daughters at the time of the execution of the will, or prior thereto, an alleged promise made by the daughters after the date of the will and in response to an alleged request on the part of the testator, that after the death of their mother they would hold two fifths of his estate in trust for their two brothers who were insolvent at the date of the will, will not be enforced by a court of equity. Such a trust being in parol is in violation of the Act of April 22, 1856, P. L. 532, and cannot be proved; and as it is neither a trust ex maleficio, nor a resulting trust, it is not within the exceptions of that act.

Argued Jan. 19, 1903. Appeal, No. 278, Jan. T., 1902, by plaintiffs, from decree of C. P. No. 5, Phila. Co., March T., 1901, No. 417, sustaining demurrer to bill in equity in case of Charles B. McCloskey, Sarah McCloskey and William J. Mc-Closkey, Joseph McCloskey, Percy McCloskey, Cecil Mc-Closkey and Charles Kingdom McCloskey, by their next friend, Charles B. McCloskey, v. Annie C. McCloskey, Sarah A. Mc-Closkey, Ellen B. McCloskey and Catherine M. McCloskey. Before MITCHELL, DEAN, FELL, BROWN, MESTREZAT and POTTER, JJ. Affirmed.

Bill in equity to enforce a trust.

Demurrer to bill.

The facts are stated in the opinion of the Supreme Court.

The court sustained the demurrer.

*Error assigned* was in sustaining the demurrer.

*Joseph S. Goodbread,* for appellants.—A trust arising from the fraud of the holder of the title is one by operation of law, and where one procures a title ‾which he could not have obtained except by a confidence reposed in him and abuses the confidence, he becomes a trustee ex maleficio : Seichrist's Appeal, 66 Pa. 237 ; Beegle v. Wentz, 55 Pa. 369 ; Charnley v. Hansbury, 13 Pa. 16 ; Greenlee v. Greenlee, 22 Pa. 225 ; Kennedy v. McCloskey, 37 W. N. C. 106 ; Fox v. Fox, 88 Pa. 19 ; Bonner v. Rowdybush, 3 Penny. 92 ; Dilts v. Stewart, 43 Legal Int. 205.

Whenever there is fraud or abuse of confidence in obtaining the title, a trust arises by operation of law, and the case is not within the act of 1856 : Seichrist's Appeal, 66 Pa. 237 ; Squires's Appeal, 70 Pa. 266 ; Cook v. Cook, 69 Pa. 443 ; Blaylock's Appeal, 73 Pa. 146 ; Boynton v. Housler, 73 Pa. 453 ; Wolford v. Herrington, 74 Pa. 311.

A constructive trust may arise under a will where one procures a devise to be made in his favor under a parol promise to hold for another: Jones v. McKee, 3 Pa. 496 ; Jones v. McKee, 6 Pa. 425 ; Church v. Ruland, 64 Pa. 432 ; Beegle v. Wentz, 55 Pa. 369 ; Socher's App., 104 Pa. 609.

No time will cover a fraud, so long as it remains concealed : Coate's Est., 2 Parsons' Select Equity Cases, 258.

The act of April 22, 1856, begins to run only from the discovery of the fraud: Dicken v. Hays, 7 Atl. Repr. 58.

*Elias P. Smithers*, with him *Furman Sheppard Phillips*, for appellees.—The parol agreement set up in the bill is not sufficient to establish a trust contrary to the provisions of the written will: Barnett v. Dougherty, 32 Pa. 371; Hoge v. Hoge, 1 Watts, 163; Robertson v. Robertson, 9 Watts, 32; Geiger v. Miller, 24 Pa. 109; Kellum v. Smith, 33 Pa. 158; Kistler's App., 73 Pa. 393; Bennett v. Dollar Savings Bank, 87 Pa. 382; Barry v. Hill, 166 Pa. 344; Martin v. Baird, 175 Pa. 540; Church v. Ruland, 64 Pa. 432; Socher's App., 104 Pa. 609; Hoffner's Est., 161 Pa. 331; Faust v. Haas, 73 Pa. 295; Salter v. Bird, 103 Pa. 436.

A court of equity will not aid the complainants, because they do not come into court with clean hands: Overman's App., 88 Pa. 276; Fisher v. Taylor, 2 Rawle, 33; Barnett's App., 46 Pa. 392; Bredin's App., 92 Pa. 241; Evans v. Dravo, 24 Pa. 62; Emerson v. Smith, 51 Pa. 90; Orne v. Kittanning Coal Co., 114 Pa. 172; Reynolds v. Boland, 202 Pa. 642.

The suit is barred by the limitation of five years in the 6th section of the Act of April 22, 1856, P. L. 532.

Opinion by Mr. Justice Brown, May 4, 1903 :

The trust which the appellants pray may be declared as existing for them rests entirely in parol. Their allegation is that it was created by William McCloskey, now deceased, who was the father of Charles B. McCloskey, one of the appellants, and of John McCloskey, who died since his father, and whose widow and children are the other appellants. The bill of complaint sets forth that, as John McCloskey and Charles B. McCloskey had become financially involved, their father, the said William McCloskey, was anxious that no part of his estate which might go to them after his death should be liable for their indebtedness, and consulted with his wife and children as to the best means to be adopted by him to prevent the shares of the sons from falling into the hands of an uncle, who was their creditor; that, as a result of the father's deliberation and consultation with his wife and children, he caused his will to be written; and that, by its terms, with the exception of two lega-

cies of $500 each, the testator bequeathed and devised his entire estate to his wife, Catherine M. McCloskey, for life; and after her death to his three daughters, Annie C., Sarah A. and Ellen B., the appellees. The averment in the bill relied upon by the appellants to establish the trust in their favor is that the father, after the execution of his will, informed and instructed his children that it was so written to protect his sons against the claim of their uncle, and "he then and there charged the defendants, his daughters, the said Annie C. McCloskey, Sarah A. McCloskey, and Ellen B. McCloskey, and his wife, Catherine M. McCloskey, that after the death of his wife, the said Catherine M. McCloskey, they, the said daughters, held two equal shares, or two equal fifth parts of his entire estate in trust for their brothers, Charles B. McCloskey and John McCloskey, notwithstanding his said will to the contrary." There is a further averment that "the said Annie C. McCloskey, Sarah A. McCloskey and Ellen B. McCloskey accepted the trust so reposed in them by their said father; that, from the time of making said will and up to the date of the death of their father, they from time to time declared that they held two equal shares, or two equal fifth parts of the estate of their father, after their mother's death, in trust for their two brothers, the said Charles B. McCloskey and John McCloskey, as ordered and directed by their father."

The trust as set forth has nothing to support it except the oral declaration of William McCloskey, after his will had been written, that he had created it for his sons and had charged his daughters with the execution of it. It not only rests in parol, but is an express one, and those who would have it enforced are confronted with the Act of April 22, 1856, P. L. 532, the fourth section of which is "That all declarations or creations of trusts or confidencies of any lands, tenements or hereditaments, and all grants and assignments thereof shall be manifested by writing, signed by the party holding the title thereof, or by his last will in writing, or else to be void; Provided, That where any conveyance shall be made of any lands or tenements by which a trust or confidence shall or may arise or result by implication or construction of law, or be transferred or extinguished by act or operation of law, then and in every such case such trust or confidence shall be of the like force and ef-

fect as if this act had not been passed." In the face of the foregoing provision, the trust in this case, as averred in the bill, cannot stand. "The plain meaning of this enactment is, that a trust in land can now be proved in no other way than by writing:" Barnet v. Dougherty, 32 Pa. 371.

Though the trust is set forth as an express one, created by parol, the applicants seek to avoid the effect of the act of 1856, on the ground that a trust has resulted to them from the fraud of the appellees and is, therefore, within the exception of the act. But the only misconduct charged is that the appellees now refuse to recognize the trust, and that, notwithstanding their promise to be bound by it, they now declare they will not regard it. This is not enough to take the case out of the plain words of the statute. If no valid trust was created in the first instance by William McCloskey, because he did not declare it in writing, there are no trustees to be bound by their promises, nor any cestuis que trustent to be protected. The statute of frauds would soon become a dead letter if the mere broken promise of a trustee under a trust created by parol, who had agreed to carry it out, should, without more, be held sufficient to create a trust by implication within the exception of the act. It is only when a trustee refuses to perform or recognize a trust that courts are asked to declare its existence as against him, and if a trust, which has no legal existence under the statute, can be brought into being as within the exception simply because a trustee breaks his promise to perform, no case will be without the exception. "The statute of frauds would be worse than waste paper, if a breach of the promise created a trust in the promisor, which the contract itself was insufficient to raise:" Kellum et al. v. Smith, 33 Pa. 158. The case is within the rule as laid down in Barnet v. Dougherty, 32 Pa. 371, Williard v. Williard, 56 Pa. 119, Kistler's Appeal, 73 Pa. 393, Bennett v. Dollar Savings Bank, 87 Pa. 382, Barry v. Hill, 166 Pa. 344, and Martin v. Baird, 175 Pa. 540, that, where there is nothing more in the transaction than arises from the violation of a parol agreement on the part of the alleged trustee, equity will not decree a trust.

There is no averment in the bill that the testator was induced by the appellees to dispose of his estate as he did, or that any misrepresentation, artifice or fraud was practiced

upon him by his three daughters, causing him to make them the devisees of practically his whole estate upon the death of their mother. If there were such an averment, the demurrer, of course, could not be sustained; for, if the devise was procured under a distinct declaration or promise by the devisees that they would hold two fifths of the land in trust for the appellants, they could not take advantage of their own bad faith and fraud, and there would be a trust to be sustained as coming within the proviso of the act. Where an absolute devise is procured through the promise of a devisee that he will hold it for such uses and purposes or for such beneficiaries as the testator may designate, the breaking of the promise, without which the devise would not have been made, is bad faith to the testator. If such promise be broken, the devisee, as the holder of a legal title procured by fraud, is turned by equity into a trustee ex maleficio of a trust arising out of his own bad faith, and not, therefore, within the statute of frauds. If he could profit from his bad faith, that statute, which is intended to prevent fraud, would itself become the instrument for the perpetration of it. But unkept promises, declarations or misrepresentations, which will create trustees ex maleficio must be made before or at the time the legal title is acquired or the devise made; for nothing subsequently said by a grantee or devisee will turn an estate that had passed absolutely from the grantor or testator into a trust for others. The land of a grantor or testator, who alone can impress it with a trust, never passes from him so impressed, unless the impress is in writing, or he is induced at the time of his conveyance or devise to make it by reliance upon the pledged faith of his grantee or devisee, subsequently broken, that his express wishes will be carried out.

In construing the act of 1856, shortly after its passage, in Barnet v. Dougherty, supra, it was said: " The fourth section of that act enacts ' that all declarations or creations of trusts or confidences of any lands, tenements, or hereditaments, and all grants or assignments thereof shall be manifested by writing, signed by the party holding the title thereof, or by his last will in writing, or else to be void.' The plain meaning of this enactment is, that a trust in land can now be proved in no other way than by writing. The proviso, indeed, excepts from

its operation resulting trusts, such as the law implies. A resulting trust, however, is raised only from fraud in obtaining the title, or from payment of the purchase money when the title is acquired. Payment of the purchase money, subsequently, is not sufficient to raise a legal implication of a trust, as all the authorities show. The defendant's offer, in this case, was not to show any fraud in making the purchase at sheriff's sale, such as to constitute Richards, or his grantee Dougherty a trustee ex maleficio. No misrepresentation, no management of any kind was averred; none was offered to be proved. Yet it is fraud in the purchase which makes the holder of the title a trustee. Subsequent fraud, if any exist, no more raises a trust than does subsequent payment of the purchase money." The doctrine, as announced in that case, that a resulting trust arises only from fraud in obtaining the title, has been since repeatedly applied to devises as well. " That a trust ex maleficio is not within the prohibition contained in the seventh section of the statute of frauds and perjuries, 29 Car. 2, c. 3, which was adopted and enacted in this state by the fourth section of the Act of April 22, 1856, P. L. 532, has been the uniform doctrine of the English courts : Hill on Trustees, 59, and the cases there cited, to which may be added Plumer v. Reed, 38 Pa. 46, and Beegle v. Wentz, 55 Pa. 369, decided by this court since the passage of the act. Indeed it is not easy to see how such a trust ever could be made out except by parol evidence, and if this is not competent a statute made to prevent frauds would become a most potent instrument whereby to give them success. That this doctrine is applied to cases arising under wills where a person procures a devise to be made in his favor on the distinct declaration or promise that he will hold the land in trust either in whole or in part for another may be seen in the cases referred to in 1 Jarman on Wills, 356; 1 Story's Equity, sec. 256 : " Church v. Ruland, 64 Pa. 432. " Bound, therefore, as we must be by the spirit and letter of the statute, we can but repeat what was held as law in the case of Barnet v. Dougherty, 32 Pa. 371, that a resulting trust can only arise from some fraudulent act by or through which the title had been obtained, or by the payment of the money of the alleged use party for the purchase of the property at the time when the conveyance is made, and that neither subsequent fraud nor

subsequent payment will avail to raise such a trust: " Salter v. Bird, 103 Pa. 436.

As there was no valid trust expressly declared in writing, as required by the act of 1856, or arising by implication, the appellees were entitled to judgment on the demurrer.

Judgment affirmed.