## Langan v. Langan.

*Trusts and trustees—Constructive trust—Parol agreement—Ejectment— Acts of April 22, 1856, and June 7, 1915.*

1. Under the Act of June 7, 1915, P. L. 887, the court in an action of ejectment may enter such judgment on the pleadings in favor of either party as it may appear to the court the party is entitled to.

2. Where a deed is made by a father to a son without any fraud on the part of the latter in procuring it, the breach of a parol agreement, made by the son when the deed was executed, cannot, under the Act of April 22, 1856, P. L. 532, be set up in an ejectment by the son seeking to gain possession of the property.

Ejectment. Rule for judgment for want of sufficient affidavit of defence. C. P. Lackawanna Co., Oct. Term, 1921, No. 990.

*Knapp, O'Malley, Hill & Harris,* for plaintiff.

*P. E. Kilcullen,* for defendant.

MAXEY, J., Jan. 24, 1922.—This is an action to recover possession of the premises situate at No. 1112 Main Street, in the Borough of Dickson City, Lackawanna County, together with all mesne profits accruing since April 1, 1910. The plaintiff claims that he is the owner in fee of the premises in question, and that the same were deeded to him by John J. Langan on Jan. 14, 1899, said deed being recorded in the office for the recording of deeds in Lackawanna County, in Deed Book No. 188, at page 120. Plaintiff traces title by virtue of various intermediate conveyances from the Commonwealth to himself. He claims the defendants are in possession of the premises with-

out right and without claim of title, and that they refuse to vacate the premises and deliver possession to the plaintiff, notwithstanding repeated demands on his part.

Defendants in their answer aver that when the property in question was conveyed by John J. Langan and Julia, his wife, to Miles Langan, on Jan. 14, 1899, the said John J. Langan declared, in the presence of the plaintiff and the defendants, that said deed was given to said Miles Langan in trust, and on condition that the defendants herein, who are the children and grandchildren of the said John J. Langan and Julia, his wife, reside in said premises, rent free, during the term of their natural lives or so long as they chose to do so; that the said defendants pay the taxes and water rents and keep the premises in repair, and that they care for, support and maintain Julia Langan, the then wife of John J. Langan, and now the widow of John J. Langan, during the balance of her natural life; and that said Miles Langan, previous to the conveyance of the premises, and in consideration therefor, declared that he would accept said trust and would never turn any of the defendants out of the premises so long as they desired to remain.

Defendants in their answer further aver that the said John J. Langan died about twelve years ago, leaving to survive him the defendants and his widow, Julia Langan, who has ever since that time remained with the defendants, and, in accordance with the agreement aforesaid, has enjoyed a home and been supported free of charge by the defendants in said premises; that since the time of said conveyance to Miles Langan in January, 1899, the defendants have, in accordance with the terms of said trust, lived in the dwelling-house on said premises rent free, and have paid the taxes and water rents and kept the same in repair, with the consent and approval of said Miles Langan; that valuable improvements have been made in said premises at the expense of the defendants and without any objection on the part of the plaintiff; that the premises have been kept in repair and the taxes paid by the defendants during the past twenty-two years, without any effort or attempt on the part of the plaintiff to dispute the right of the defendants to the exclusive possession of said premises in accordance with the terms of the trust averred by the defendants.

The plaintiff thereupon entered a rule for judgment for want of sufficient affidavit of defence; and set forth in support of said rule that, first, the defendants' answer sets forth conclusions of law; second, defendants' answer is evasive, vague and indefinite; and, third, the defendants' answer does not set forth facts which, if true, would be a sufficient defence in this action.

The Act of June 7, 1915, P. L. 887, vests power in the court to "enter such judgment on the pleadings, in favor of either party, as it may appear to the court the party is entitled to."

The defendants in their answer set up, as a defence, a trust. The Act of April 22, 1856, § 4, P. L. 533, provides that: "All declarations or creations of trusts or confidences of any lands, tenements or hereditaments, and all grants and assignments thereof, shall be manifested by writing, signed by the party holding the title thereof, or by his last will in writing, or else to be void: Provided, that where any conveyance shall be made of any lands or tenements, by which a trust or confidence shall or may arise or result by implication or construction of law, or be transferred or extinguished by act or operation of law, then, and in every such case, such trust or confidence shall be of the like force and effect as if this act had not been passed."

The defendants' answer does not aver a constructive trust. It merely avers a parol agreement made at the time of the conveyance, the subsequent breach of which will not constitute the grantee a trustee *ex maleficio*. In the answer
2 D. & C.

there is no averment of any attempt on the part of Miles Langan to procure or obtain the conveyance from his father; neither is there any averment that John J. Langan, the grantor, relied on any declaration made by Miles Langan; neither is there any averment of an intentionally false and fraudulent promise on the part of Miles Langan to hold the premises for a specific purpose. There is no averment of fraud of any kind whatsoever, and without fraud no constructive trust can be raised.

Kellum et al. v. Smith, 33 Pa. 158: "It is abundantly settled that equity will not decree such a purchaser (of property at sheriff's sale) to be a trustee, unless there is something more in the transaction than the mere violation of a parol agreement. . . . What more was there in this case than the violation of a parol agreement to hold the property for the benefit of the debtor? . . . The statute of frauds would be worse than waste paper if a breach of the promise created a trust in the promisor which the contract itself was insufficient to raise."

McCloskey v. McCloskey, 205 Pa. 491, 495: "The statute of frauds would soon become a dead letter if the mere broken promise of a trustee under a trust created by parol, who had agreed to carry it out, should, without more, be held sufficient to create a trust by implication within the exception of the act. . . . If a trust, which has no legal existence under the statute, can be brought into being as within the exception simply because a trustee breaks his promise to perform, no case will be without the exception."

Salter et al. v. Bird, 103 Pa. 436: William Salter agreed to convey to Henry Shipp, who agreed, orally, to hold in trust for Salter's children until they paid a certain debt. He did so hold until the debt was paid by Salter's sons, and then he conveyed to Mary A. Salter, widow of William Salter, under a verbal agreement that she would hold it in trust for said children. The court said: "But, when all this is admitted, we have in Mrs. Salter (Owen), but a parol trust, which by force of the 4th section of the Act of April 22, 1856, was void from its inception. . . . Unless, therefore, this case can be brought within that provision of the statute which excepts trusts resulting from legal implication, or construction, commonly called resulting trusts, the plaintiffs have no title. But, in order to accomplish this result, it must be shown that Mrs. Salter obtained the deed to the property in dispute by some kind of fraud or artifice which induced its execution. But nothing of the kind has been proposed. All that is alleged is that she agreed to hold it in trust for her children. But we cannot see how it would be possible to create a parol trust under any other conditions. If such a trust is not within the statute, then there can be none that comes within it. For if a deed, like the one before us, absolute on its face, be made to one who receives it and does not agree to hold it in trust, there is, and can be, no trust for the statute to operate upon; the transaction begins and ends in an unqualified conveyance. Bound, therefore, as we must be by the spirit and letter of the statute, we can but repeat what was held as law in the case of Barnet v. Dougherty, 32 Pa. 371, that a resulting trust can only arise from some fraudulent act by or through which the title had been obtained, or by the payment of the money of the alleged use-party for the purchase of the property at the time when the conveyance is made, and that neither subsequent fraud nor subsequent payment will avail to raise such a trust."

Under the Act of April 22, 1856, P. L. 532, and in the light of the foregoing decisions, we think the third reason set forth by the plaintiff in support of the rule for judgment for want of a sufficient affidavit of defence should be sustained.

Langan v. Langan.

Therefore, now, to wit, Jan. 24, 1922, the rule is·made absolute, and judgment is directed for the plaintiff and against the defendants for the lands described in the præcipe and writ.

From Thomas F. Wells, Scranton, Pa.