## Johnson & Johnson *v.* Shrawder, Appellant.

*Real property—Title to land — Equitable adjustment — Parol agreement to sell—Failure of promisee to comply—Decree.*

A resulting trust is raised only from fraud in obtaining a title to real estate or from the payment of purchase money when the title is acquired.  Such a trust can only arise from some fraudulent act by or through which the title has been obtained, or by the

Syllabus—Opinion of Court below. [80 Pa. Superior Ct.
payment of the money of the alleged use party for the purchase of
the property, at the time the conveyance is made.

Where a purchaser at an orphans' court sale agreed verbally to
convey to the party in possession upon the reimbursement· by the
latter of the expenses of the sale, etc., and the promisee fails to
perform his part of the agreement and remains in possession for
five years, during which time he pays nothing toward the property
except the taxes and $25 on account, a decree in ejectment is prop-
erly entered against him.

Argued December 4, 1922. Appeal, No. 241, Oct.. T.,
1922, by defendant, from judgment of C. P. Montgomery
County, Nov. T., 1921, No. 11, in favor of the plaintiff,
in case of J. Howard Johnson and Myra Johnson v. Wil-
liam Warren Shrawder. Before Porter, Henderson,
Trexler, Keller, Linn and Gawthrop, JJ. Affirmed.

Equitable action in ejectment for the recovery of lands
situated in North Wales, Montgomery County, Pa. Be-
fore Swartz, P. J.

Rule for judgment in favor of the plaintiffs on the
pleadings pursuant to the Act of June 7, 1915, P. L. 887.

The facts are stated in the following opinion of the
court below:

The plaintiffs claim to be the owners of a property
situate in the Borough of North Wales. The defendant
is in possession of the same.

They brought ejectment and defendant filed his answer
and pleadings. The plaintiffs contend that they are en-
titled to judgment, in their favor, on the pleadings be-
fore the court.

The property in question was sold at an orphans'
court sale held on March 14, 1917. Prior to the sale the
plaintiffs agreed to assist the defendant in the purchase
of the property. He declined because unable to furnish
any money. The plaintiffs then informed him that they
would buy for themselves. The property was struck off
to them at the orphans' court sale. The price was three
hundred dollars, subject to an existing mortgage of

$1,400. They paid the down money. After the sale they informed the defendant that if he would pay to them all the money expended in the purchase and raise all the money necessary to complete the sale they would have the deed made to him.

The plaintiffs delayed in paying the entire purchase money to enable the defendant to raise the funds he agreed to furnish to secure the title for himself. This delay continued until June 23, 1917, when the plaintiffs paid the balance of the purchase money and took title in their names. During all this delay the defendant failed to raise or pay a single dollar toward the purchase.

Plaintiffs paid off the existing mortgage of $1,400 and made their own mortgage for $1,300. They had a note discounted in bank for $525, and thereby paid the entire purchase money.

After the plaintiffs received the title they again agreed to convey to the defendant if he would make them whole for all expenses incurred in their purchase.

All these promises to convey title to the defendant were in parol.

The defendant in his pleadings sets out the parol agreement as follows:

"That the property was to be put in the name of the plaintiffs; that the defendant was to have possession of the premises, make all necessary repairs, pay all taxes, the interest on the mortgage, the interest on the $525 note, and as soon as he was able to pay off said note the plaintiffs were to deed the property to him."

The defendant declares that he had possession from the day of the sale.

The plaintiffs claim that the possession was not taken in pursuance of the parole agreement, that it existed at the time of the orphans' court sale, but upon this motion for judgment we shall assume that possession was given under the parol agreement.

The defendant did not pay off the note of $525. He did not keep his agreement to pay the taxes. The plaintiffs were compelled to pay them from time to time, but were reimbursed, according to the defendant's answer. The repayments, however, were very dilatory and required many demands and threats. These failures to comply with the parol contract continued from year to year, giving the plaintiffs much trouble and annoyance without one dollar of compensation.

No rent was paid by the defendant. Finally, on April 12, 1921, after giving the defendant four years to comply with the parol agreement, he was notified in writing· to vacate the premises, on or before July 12, 1921.

The defendant alleges that he notified the plaintiffs to appear, in the office of their counsel at Norristown, on September 24, 1921, for a settlement. The plaintiffs did not appear and the defendant alleges that he made a tender to their counsel of the money due and demanded the execution of the deed. There was no tender to the plaintiffs, nor is it alleged that counsel had any authority to accept or refuse such tender, if made.

The notice to vacate was absolute and gave the defendant no privilege to pay on or before the day fixed for the vacation. It was a rescission of the parole agreement.

The orphans' court sale was a judicial sale and it is not alleged that the plaintiffs or defendant had any interest in the property.

The ejectment was brought on December 29, 1921, nearly five years after the parol agreement had its inception.

The defendant paid twenty-five dollars to the plaintiffs on the said note of $525. The date of payment is not given, but it was considerable time after the sale and after the title was made to the plaintiffs.

Two letters were written to the defendant by the plaintiff, J. Howard Johnson. They are dunning letters, complaining about the nonpayment of the taxes by the defendant and demanding a reimbursement for the taxes

the plaintiffs had been compelled to pay. These letters do not identify the property, nor do they, in any way, define the terms of any contract.

There is no allegation of any improvements made on the premises by the defendant. There is no damage that he will suffer if he must quit. He enjoyed the use of a house and lot for five years without the payment of any rent other than taxes and the interest on the mortgage and note. Twenty-five dollars on account of the note is the extent of his outlay. He enjoyed all the benefits under the parol contract and the plaintiffs received no return for the use, wear and tear of their house.

There is no evidence whatever to support a resulting trust. No money was contributed to buy the property, nor was there any fraud on the part of the plaintiffs. There was no confidential relation and the defendant was not deceived by anything that was said or done by the plaintiffs. It is not shown that he or others were induced to refrain from bidding on the property.

As there was no fraud, at the time of the sale, subsequent refusal to convey does not constitute fraud to support a resulting trust or a trust ex maleficio.

It is not alleged that either party had any interest in the property before or at the time the orphans' court sale was held.

"A resulting trust can only arise from some fraudulent act by or through which the title had been obtained, or by the payment of the money of the alleged use party for the purchase of the property, at the time the conveyance is made and that neither subsequent fraud nor subsequent payment will avail to raise such a trust": Salter v. Bird, 103 Pa. 436; McCloskey v. McCloskey, 205 Pa. 491; Kraft v. Smith, 117 Pa. 183. The subsequent payment of the paltry sum of twenty-five dollars and the reimbursement of a few dollars of expenses incurred by the plaintiffs will not raise a resulting trust.

"A resulting trust, however, is raised only from fraud in obtaining the title, or from the payment of the pur-

Opinion of Court below. [80 Pa. Superior Ct.

chase money when the title is acquired. Payment of the purchase money subsequently is not sufficient to raise a legal implication of a trust, as all the authorities show": Bryan v. Douds, 213 Pa. 221.

The violation of the purchaser at sheriff's sale, of a parol agreement, that he would buy for another, a stranger to the title but occupying the property and to convey the lands to the latter upon the payment of the purchase money will not create a trust ex maleficio in favor of the promisee. The subsequent payment of taxes and ordinary repairs tends only to establish the parol agreement, but not that there was fraud when it was made: Shaffner v. Shaffner, 145 Pa. 163.

Even where a small amount of the purchase money was paid by the promisee, at the time the promissor bought, was held not sufficient to raise a resulting trust: Parry v. Miller, 247 Pa. 51.

It follows that the defendant has nothing in support of his claim other than his naked parol agreement to convey. He made no improvements and the purchase money was never paid.

Possession without payment of the purchase money or valuable improvements that cannot be compensated in damages will not support the defendant's claim of title. There is no allegation of any improvements.

In Parry v. Miller, supra, some purchase money was paid at the time of the sale, outbuildings were erected under the possession taken and all the purchase money was subsequently paid according to the finding of the jury, and yet the court held that it was a close case, not free from difficulties, and with some hesitation the verdict of the jury, in favor of the parol promisee, was sustained.

The parol contract must be so far executed by the vendee that it would be a fraud upon him to refuse a conveyance: Greenlee v. Greenlee, 22 Pa. 225. There must be such partial performance, including the taking of possession, as would make it unjust and inequitable

not to execute the contract: Reno v. Ross, 120 Pa. 49. We can find no such equitable rights in favor of the defendant. A chancellor cannot say that under the pleadings it would be unjust to deny the equitable enforcement of the contract. If this defendant, under the pleadings, is entitled to a deed, then the statute of frauds can be easily circumvented. The defendant fails to allege any loss or disadvantage if a deed is denied to him.

The equities are with the plaintiffs. If the defendant can delay for nearly five years before he concludes to take title then he can take advantage of any increase in the value of the property or leave it in the hands of the vendor if such value should decline.

The letters recited in the defendant's pleadings do not help his claim. As already stated, these letters do not describe or define the property, nor do they give the terms of any contract. "The written evidence of the contract signed by the party holding the legal title should contain, within itself, all that is necessary to enable a chancellor to declare the trust and make a decree in favor of the beneficiaries. Oral evidence cannot be introduced to supply any link in the chain of testimony": Dyer's App., 107 Pa. 446.

But if we are in error and the defendant had a right to demand a deed, he forfeited his claim by the delay in complying with his terms of the contract. It is well established, that where no time limit is fixed for the conveyance, the law declares that compliance must be made by the vendee within a reasonable time. After the patience of the plaintiffs for nearly five years, they certainly had a right to rescind the contract.

The notice to vacate was given on April 12, 1921, more than four years after the plaintiffs bought the property. It was not until September 24, 1921, that the defendant made his alleged ineffectual tender. "The party seeking specific performance must show affirmatively, that he has been in no default, which cannot be explained or excused and that he has taken all proper steps towards

the performance on his own part, for mutuality is of the essence of all contracts and indispensable to move the conscience of a chancellor": Greenlee v. Greenlee, 22 Pa. 235.

Tested by this rule the defendant is wholly without any equity to maintain title to the property.

And now, May 17, 1922, judgment is entered in favor of the plaintiffs and against the defendant on pleadings before the court, for the premises described in the writ to the sheriff.

Defendant appealed.

*Errors assigned,* among others, were refusal to submit the case to a jury, and the judgment of the court.

*E. F. Slough,* for appellant.

*Irvin P. Knipe,* for appellees.

Per Curiam, December 11, 1922:

The questions involved in this case are fully considered in the opinion of President Judge Swartz of the court below, which vindicates the conclusion reached, and for the reasons therein stated, the specifications of error are dismissed. To the authorities cited in said opinion may be added Myers v. Byerly, 45 Pa. 368; Willard v. Willard, 56 Pa. 119, and Payne v. Patterson, 77 Pa. 134.

The judgment is affirmed.