## Moyer v. Yoder.

*Mark Thatcher,* for plaintiff; *Hiram H. Keller,* for defendant.

RYAN, P. J., Jan. 7, 1929.—The plaintiff avers that the defendant purchased a property belonging to her husband at a sheriff's sale and before he did so agreed that he would permit her to buy it from him after he became the purchaser. The defendant denies that the plaintiff is entitled to equitable relief and refuses to convey. The bill prays for the enforcement of the alleged agreement.

### Finding of facts.

1. Howard H. Moyer, the plaintiff's husband, from April 1, 1921, to Oct. 2, 1926, was the owner of a certain messuage and three tracts of land situated

in the Township of Hilltown and County of Bucks, containing 9 acres and 7 perches, 3 acres and 2 acres and 149 perches, respectively.

2. The said premises were sold at sheriff's sale on Oct. 2, 1926, to Samuel M. Yoder, the defendant, for the consideration of $3635, a deed for the same being delivered to him by Abram L. Kulp, sheriff, on Oct. 18, 1926.

3. At the date of said sheriff's sale the said premises were subject to the lien of judgments as follows: Edgar W. Crouthamel, assignee of the estate of Jacob B. Crouthamel, deceased, v. Howard H. Moyer and Mayme D. Moyer, revived March 11, 1926, to No. 206, April Term, 1926, recorded in Judgment Docket No. 47, page 199, for $3340.13; Samuel M. Yoder, to the use of John W. Nace, v. Howard H. Moyer and Artemas M. Bishop, revived April 29, 1926, to No. 55, April Term, 1926, for $1400; Mayme D. Moyer v. Howard H. Moyer, revived June 8, 1926, for $1750, with interest; Sellersville National Bank v. Howard H. Moyer, revived to June 11, 1926, to No. 32, June Term, 1926, for $2500, with interest; The Texas Company v. Howard H. Moyer, judgment by default, for $492.56 (execution issued thereon but exemption claimed by the defendant and no money realized); The Fiske Tire Co., a corporation, v. Howard H. Moyer, judgment by default, for $2124.31 and costs.

4. The said premises were sold upon a *fi. fa.* upon the first judgment lien of Edgar W. Crouthamel, assignee, &c., v. Howard H. Moyer and Mayme D. Moyer and purchased by the said Samuel M. Yoder, the second lien creditor.

5. After the sale the defendant sold the two lots containing 3 acres and 2 acres and 149 perches. He also removed a building from the premises. At the time of the filing of the bill, he still held title to the 9 acres and 7 perches, upon which stand the buildings.

6. The defendant and her husband since the sheriff's sale have continued to live on the remaining tract, paying rent at the rate of $15 a month.

### Discussion.

The evidence does not sustain the contention of the plaintiff that by reason of assurances given to her before the sale by the defendant a trust *ex maleficio* in her favor resulted from the defendant's purchase of the land. She testified to a conversation had with the defendant two days before the sale at her house as follows: Q. "Did Mr. Yoder before the time of the sheriff's sale say anything to you about the purchase of this property at the sheriff's sale?" A. "Yes, sir." Q. "For whom did he say he was purchasing it?" A. "Said he would buy it himself, but if we could handle it once we could have it and he wouldn't want to make a cent." Annie Yoder, the plaintiff's mother, who was present when the conversation with the defendant testified to by plaintiff took place, testified as follows: "He said he was going to buy the property for himself and when they were able, that they had money to pay the taxes and interest, she would have the first chance and he wouldn't make a cent at the price; if he would fix anything it would be taken account, and if he would make anything on the lots it would go off of the property." Howard H. Moyer, the plaintiff's husband, testified that two or three days before the sale the defendant said to him, in the absence of the plaintiff but in the presence of the defendant's wife, and in answer to the witness's inquiry: "Are you going to buy the place so that my wife can get it afterwards or not?" "We will see," and that he (Moyer) said in response: "We would see then, right now was the time to see; we didn't want to see after the thing was over and it was too late." Again, he testified that the defendant said to him the following night "that him and his wife decided to buy the place and to place it in his name and fix up what necessary repairs were to be made, new barn roof, new

porch roof, and so forth, make the necessary repairs and sell off those build-ing-lots, which he did sell off, and whatever money that would bring would lower the place in price, and whatever he would spend to fix it up would be added up and he could turn it over to my wife and he didn't want to make a dollar." The defendant testified to substantially the same thing. He said that he said to the plaintiff: "I will buy it for myself, and if you have money and want to buy it, you will have the first chance and I won't make a cent." He also said that the plaintiff had sent word to him that he "should not buy the property for them." This testimony on the part of the plaintiff goes no further than to establish a mere naked promise to convey to the plaintiff after the sale if she was able to buy the property. It was a contract resting in parol merely and did not pass any title to the land that could be enforced in equity or by ejectment. The defendant had an interest in the sale and bid to protect his judgment next in rank after that upon which execution was issued and the sale held. He paid for the property with his own money. The plain-tiff had no interest in the property: Bank v. Cowperthwaite, 10 W. N. C. 532. She paid no part of the purchase money. She showed no fraud on the part of the defendant which entered into his purchase of the property at sheriff's sale. The testimony as to an arrangement with Allen G. Moyer to buy the property for plaintiff if Samuel D. Yoder, the defendant, did not do so is vague and uncertain. It appears that Allen G. Moyer, Samuel D. Yoder, Mrs. Samuel D. Yoder and the plaintiff were present at the plaintiff's home at a conversation about the expected sheriff's sale of the property. It took place six weeks or two months before the sale and before the property was adver-tised for sale. While Allen G. Moyer testified that he would have been willing to buy the property if Samuel D. Yoder did not, he did not say so to Samuel D. Yoder, and it does not appear that the latter knew of any arrangement with Allen G. Moyer to do so. In the absence of such knowledge on Samuel D. Yoder's part, he cannot be said to have made any representations to any-body to induce him to refrain from bidding. "A resulting trust can only arise from some fraudulent act by or through which the title had been obtained, or by the payment of the money of the alleged use-party for the purchase of the property, at the time the conveyance is made and that neither subsequent fraud nor subsequent payment will avail to raise such a trust:" Salter v. Bird, 103 Pa. 436; McCloskey v. McCloskey, 205 Pa. 491; Kraft v. Smith, 117 Pa. 183; Johnson v. Shrawder, 80 Pa. Superior Ct. 125; Justice v. Watkins, 276 Pa. 138. The plaintiff, therefore, has failed to make out a case within the authorities and her bill must be dismissed.

We have reached, therefore, the following

### Conclusions of law.

1. The defendant does not hold title to the land purchased by him at the sheriff's sale as trustee for the plaintiff.

2. The plaintiff is not entitled to the relief prayed for and her bill must be dismissed.

### Decree.

And now, to wit, Jan. 7, 1929, upon consideration of the foregoing case, it is ordered, adjudged and decreed that the prothonotary is instructed to enter a decree nisi in accordance with the foregoing conclusions of law and forthwith to give notice to the parties, or their counsel, of the filing of this decision and the entering of the decree nisi.

From Calvin S. Boyer, Doylestown, Pa.