## Seif *v.* Muse, Appellant.

*Trusts and trustees—Trust ex maleficio—Deed—Unrecorded deed —Declarations of deceased grantor—Evidence—Fraud.*

Where a father in 1894 executes and delivers a deed of land to his son, and the deed is recorded, and in 1899, the father, while in actual and visible possession of the land executes and delivers a deed for the same land to another person, and this deed is recorded, and it appears that the father had executed in 1897, a deed to his son for the same land, and that this deed had not been recorded, but had remained in the possession of the father, the son cannot establish a resulting trust ex maleficio for the land, without proof that his father had practiced fraud or made misrepresentations in procuring the deed after it had been delivered and in keeping it in his possession.

In such a case it is not error to refuse to admit in evidence declarations of the father made in the latter's lifetime to the effect that the unrecorded deed had been executed and delivered, that the land still belonged to the son, that the deed was to have been returned to the son, that the father did not intend to have it recorded, but meant to destroy it, and had looked for the deed for that purpose, but was unable to find it.

A trust ex maleficio can arise only at the inception of the title from fraud when practiced in obtaining it. In the absence of such fraud a trust ex maleficio cannot be created by subsequent declarations.

Argued May 6, 1918. Appeal, No. 63, April T., 1918, by defendant, from judgment of C. P. Allegheny Co., July T., 1914, No. 1349, on verdict for plaintiffs in case of William H. Seif et al. v. George Muse. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, KEPHART and TREXLER, JJ. Affirmed.

Ejectment for land in Versailles Township. Before EVANS, J.

From the record it appeared that by deed dated November 28, 1894, and properly recorded, John Muse, Jr., and his wife conveyed the land in dispute to the defendant, George Muse. By deed dated some time in 1897, and

not recorded, George Muse reconveyed the land in dispute to his father, John Muse, Jr. John Muse, Jr., and wife, by deed dated January 25, 1899, and properly recorded, conveyed, inter alia, the land in dispute to Christopher L. Magee. Christopher L. Magee died March 8, 1901, and by his last will and testament devised this land with the remainder of the farm of John Muse, Jr., to John Muse, Jr., and Martha L. Muse during their lives and the life of the survivor, and the remainder to the plaintiffs as trustees. John Muse, Jr., died on March 3, 1910, his wife having died some years before. John Muse, Jr., was in possession of the land in dispute at the time of the conveyance to C. L. Magee and continued in possession, either actually himself or through his tenant, until the time of his death in 1910. Some time after the death of John Muse, Jr., the deed from George Muse to John Muse, Jr., was found and George Muse took possession of the deed, stating that it belonged to him, and subsequently destroyed it. He then took possession of the fourteen acres of land in dispute.

The defendant offered to prove declarations of John Muse, Jr., to the effect that the deed from George Muse to him was without consideration and was not intended to be a conveyance, but was for the purpose of placing the title to this land in John Muse, Jr., that he might borrow money on a mortgage.

On objection this offer was overruled. Exception. (1, 2)

The court directed a verdict for plaintiffs. (3)

Verdict and judgment for plaintiffs. Defendant appealed.

*Errors assigned* were (1, 2) rulings on evidence quoting the bills of exceptions and (3) in giving binding instructions for plaintiffs.

*George W. Flowers,* for appellant.—The declarations of the owner of land made while in possession against

his interest or title are admissible in actions against those who claim under him as well as against himself: Bassler v. Niesly, 2 S. & R. 352; Weidman v. Kohr, 4 S. & R. 174; Kunkle v. Wolfersberger, 6 Watts 126; Hyde-Murphy Co. v. Boyer, 229 Pa. 7; Benner v. Hauser, 11 S. & R. 352; Hiester v. Laird, 1 W. & S. 245; Alden v. Grove, 18 Pa. 377.

*Lee C. Beatty,* for appellees.—The court below, in disposing of this case, did it under the authority of Turney v. McKown, 242 Pa. 565.

A trust ex maleficio may not be created by subsequent declarations in effect acknowledging the trust. Where the transaction implies nothing more than the breach of a parol agreement equity will not decree a trust: Jourdan v. Andrews, 258 Pa. 347; Rice v. Braden, 243 Pa. 141; Diehl v. Emig, 65 Pa. 320.

OPINION BY HEAD, J., October 12, 1918:

The action was ejectment. As the issue was made up and the trial conducted it is evident the contest turned on the real ownership of the land in dispute. There is no question in the case of any right of possession accruing to the defendant other than would be a legal incident to his ownership of the land. In a word, the purpose of the action was to try the title to the real estate.

It is agreed that John Muse, Jr., was the common ancestor in title, each of the parties claiming ownership as under a conveyance made by him. It appears that by a deed executed by him and his wife and duly delivered this common ancestor, for a valuable consideration, conveyed the land in dispute to his son, the defendant. The deed was dated November 28, 1894, and duly recorded. It further appeared that by deed dated January 25, 1899, also promptly recorded, the same grantor and his wife conveyed the premises in dispute, inter alia, to C. L. Magee, the plaintiffs' testator, and, that at the time of this conveyance John Muse, the grantor, was in the

actual, visible possession of the premises. These are all of the material conveyances that were recorded in the lifetime of John Muse and down to the time when this action was begun. Looking then solely at the recorded deeds it is clear the plaintiffs had no case for the obvious reason that the deed under which they claimed was subsequent in date to the earlier recorded deed to the defendant of which the purchaser, under the second conveyance, had legal notice.

To avoid the situation that would manifestly arise if there were nothing before us but the recorded conveyances, the plaintiffs were able to establish, by parol evidence not contradicted, that in 1897 George Muse, the grantee, in the earlier deed, had reconveyed the same land to his father by a deed duly executed and delivered to the latter. Although this deed was never recorded it remained in the possession of John Muse, Jr., the father, until the time of his death in 1910, when it was found among his papers. The defendant being present with other parties interested, took the deed, claiming that it belonged to him and thereafter destroyed it. Of course, the destruction of the deed which was but the evidence of title did not extinguish any title that may have vested in the father by its execution and delivery. Upon the introduction of this proof, then, the prima facies of the case was with the plaintiff, because it appeared that John Muse, the grantor to their testator, had a good paper title to the land at the time he conveyed to Magee. The burden then shifted to the defendant and he was called upon to prove, if he could, that the unrecorded deed conveyed no title whatever. The assignments of error complain solely of the action of the learned trial judge in rejecting certain parol evidence offered by the defendant for the purpose of nullifying the effect of the unrecorded deed. Generally speaking, the defendant sought to show certain declarations made by the father in his lifetime, but long after the unrecorded deed had been executed and delivered, that the land still belonged

to his son, that the deed was. to have been returned to George; that he, the father, did not intend to have it recorded, but meant to destroy it, and that he had looked for the deed for that purpose but was unable to find it. It will be at once observed that nothing in these offered declarations tends to throw any light on what occurred between father and son at the time the deed was executed and delivered. There is nothing in the offers that would warrant the inference that any fraud or misrepresentation was practiced by the father in procuring the deed or that it was not intended that, for some purpose mutually agreed on, the title to the land should be for some time and to accomplish some object revested in the father.

Now, under these circumstances, it appears to us to be clear, under well established authorities, that the alleged declarations made after the transaction itself and when the father was in possession of the land seated no trust of any kind upon the title carried by the deed of reconveyance. There is nothing at all from which a chancellor or any tribunal could affirm the existence of any express trust to reconvey. The declarations are wholly barren of any evidence that could establish a resulting trust arising from the payment of money in favor of the grantor in the deed of reconveyance. The very utmost that could be predicated of them would be that the father retained the deed as a trustee ex maleficio.

It is true, if such trust existed, the case would be outside the primary provisions of the Act of 1856. But, here, the defendant is confronted with the principle clearly enunciated in the late cases of Turney v. McKown, 242 Pa. 565, and Jourdan v. Andrews, 258 Pa. 347. In the one first cited, Mr. Justice STEWART, speaking for the court, says: "True, trusts ex maleficio arise by implication or construction of law and are excepted out of the operation of the statute; but no rule is better established than that a trust ex maleficio can arise only at

the inception of the title, from fraud when practiced in obtaining it. This rule is too familiar to call for any citation of authorities in support. It is not pretended that the evidence adduced by plaintiff shows any fraud in the procurement of the conveyance to the defendant; on the contrary, we have the express admission that it does not. That the evidence, if believed, shows subsequent declarations by the defendant in effect acknowledging the trust, comes to nothing. A trust ex maleficio may not be so created." In the later case, Mr. Justice MOSCHZISKER, speaking for the court, uses this language: "Under this act (1856), a resulting trust in favor of another can be raised only by actual fraud against the latter, on the part of the grantee, in obtaining title, or from payment of the purchase-money by the cestui que trust at the time the person sought to be fixed with the 'confidence' acquires title; and, thereunder, unkept promises, declarations or misrepresentations, which will create a trust ex maleficio, must be made before or at the time the legal title is acquired, for nothing subsequently said by the grantee will avail for that purpose, etc." It is clear, then, that to effectuate some object which must have been perfectly understood between father and son, the latter executed and delivered to the former a deed of conveyance for the property. From that time on until his death John Muse, Jr., appears to have been in the actual possession of the land. Within probably a year after he received the unrecorded deed he sold and conveyed the land to C. L. Magee and his deed was duly placed upon the proper records of Allegheny County. Thereafter the taxes appear to have been paid, either by Magee, his tenant during his lifetime, or his estate after his death. The evidence discloses no attempt whatever made by the present defendant during the years that elapsed until his father's death, to secure a reconveyance or cause anything to be done in execution of the alleged trust. Upon this state of facts we are satisfied the learned trial judge was right

in holding there was no evidence from which a jury could find that any trust had been seated upon the title or that the defendant, even with the aid of the rejected declarations, had established a title in himself that would justify a recovery by him.

If the conclusion just stated be sound, what relevancy had the rejected offers in the trial of an issue to determine the ownership of the land? It is true, generally speaking, that declarations made by one appearing to be the owner of land and in possession of it, as to the character and extent of his holding, are often regarded as competent evidence in cases where such evidence would be relevant. But, considering the alleged declarations in the light most favorable to the defendant we cannot see they go farther than to show some subsequent breach of a parol undertaking on the part of the father that he would surrender the deed after the accomplishment of some unknown object to effectuate which the deed was freely executed and delivered. We are of opinion, therefore, that the defendant did not produce any evidence legally competent to revest in himself the title which he had voluntarily conveyed to the father and this conclusion would not be disturbed, even had the rejected offers been received as part of the evidence in the case.

Under these circumstances, we do not consider it necessary to advert specially to the further difficulty confronting the defendant by reason of the provisions of Section 6 of the Act of 1856. Of course, no action of any kind was begun by the defendant within the five years prescribed by the statute nor is there anything in this record which would warrant the inference that the alleged fraud, if any subsequently arose, could not have, by reasonable diligence, been discovered by the defendant. Nor need we more than mention this language of the section referred to, "but no bona fide purchaser from him (the alleged trustee) shall be affected thereby or deprived of the protection of the said limitation." Our

opinion, therefore, is, that the assignments of error must be overruled and the judgment of the court below affirmed.

Judgment affirmed.