Metzger *v.* Metzger et al., Appellants.

Argued March 25, 1940.   Before SCHAFFER, C. J., MAXEY, DREW, LINN, STERN, BARNES and PATTERSON, JJ.

*Luther C. Braham,* with him *Edith B. Galbreath,* of *Galbreath & Braham,* and *Carmen V. Marinaro,* for appellants.

*Clark H. Painter,* with him *Dale B. Painter, Howard I. Painter,* of *Painter & Painter,* and *Thomas O. Cratty,* for appellee.

OPINION BY MR. JUSTICE PATTERSON, June 24, 1940:
Theodore Metzger, appellee, instituted suit in equity against his mother, Mary Metzger, and his sister, Eliza-

beth Metzger, appellants, to enforce a parol trust in real estate and for an accounting.

On May 1, 1931, Mary Metzger, who was then seventy-five years of age, conveyed to Theodore Metzger, her son, and Elizabeth Metzger, her daughter, by way of gift, in equal undivided half interests, her undivided interests in seven parcels of land located in Butler, Pennsylvania. At the time of this conveyance, the son and daughter agreed, in writing, that all or so much of the net income accruing from the properties as was necessary for the mother's maintenance, comfort and support, should be paid to her, during her lifetime. Subsequently, on June 10, 1932, Theodore executed a deed of reconveyance of his share, to his mother, in which his wife, Senora S. Metzger, joined. This deed was not recorded, however, until February 6, 1934, on which date the mother, by deed recorded the following day, February 7, 1934, conveyed to Elizabeth, the daughter, without consideration and by general warranty deed, the interest which had previously been reconveyed to her by the son.

The chancellor found that, as was averred by appellee, the son, in his bill, the reconveyance by him to his mother was made solely because of statements and representations made to him on numerous occasions by his mother and sister that so long as he continued to hold and own his interest in the properties in question, in his own name, his wife, Senora S. Metzger, with whom he was then having marital difficulties, could and probably would tie up or otherwise jeopardize the rents and income therefrom to which the mother was entitled during her lifetime, by virtue of the agreement signed by his sister and himself at the time of the original conveyance to them, and that the best interests and protection of the mother required that a re-transfer of the son's interests be made to her. He found that the reconveyance, which was without consideration, was executed by Theodore and his wife, Senora, in reliance

upon the representation and understanding that the mother would hold the property as trustee until their marital difficulties were settled or until such other time as a reconveyance thereof should be requested; further that the deed dated February 6, 1934, from the mother, Mary Metzger, to the daughter, Elizabeth, was prepared and executed at the direction of the latter; that the deed was neither read nor explained to the mother at the time she affixed her signature to it and that she did not then, nor does now, understand its full import and legal effect, and that Elizabeth accepted the deed to her with full knowledge of the trusts and conditions upon which the property, thus attempted to be conveyed to her, was held by the mother.

The court below directed a reconveyance of the property in question to Theodore, and directed further that Elizabeth account to him for income received by her therefrom after February 6, 1934, and pay over such part, if any, as was not used or necessary to be used for the maintenance of Mary Metzger, the mother.

Appellants here contend (1) that the evidence offered in proof of the facts relied upon to raise a constructive trust was insufficient in law for that purpose; (2) that, even under the facts as found, the court below was not warranted in fastening a trust ex maleficio upon the original conveyance, within the proviso of section 4 of the Act of April 22, 1856, P. L. 532, that "where any conveyance shall be made of any lands or tenements by which a trust or confidence shall or may arise or result by implication or construction of law, or be transferred or extinguished by act or operation of law, then and in every such case such trust or confidence shall be of the like force and effect as if this act had not been passed"; and (3) that in any event the doctrine of "unclean hands" stands in the way of granting the equitable relief prayed for by the appellee.

After a most careful review of all the evidence, we are not convinced that the proofs are insufficient to

sustain the findings of fact. And, in reaching this conclusion, we have not been unmindful of the presumption of right which exists in favor of the one in whom the legal title is lodged in cases of this character, nor of the degree of proof required to overcome it by one asserting an implied trust in property transferred by a deed absolute in form. See *Grove v. Kase,* 195 Pa. 325; *Kern v. Smith,* 290 Pa. 566, 571; *Quinn v. Gormley,* 302 Pa. 360, 363-364.

It is undoubtedly true, as a general proposition, that proof of the mere breach of an oral agreement to hold in trust for, or reconvey to, the grantor, which appellants contend is the most that the evidence shows, is not sufficient to establish a parol trust in lands *(Barry v. Hill,* 166 Pa. 344, 349; *Grove v. Kase,* supra, 328; *McCloskey v. McCloskey,* 205 Pa. 491, 495; *Turney v. McKown,* 242 Pa. 565, 568; *Jourdan v. Andrews,* 258 Pa. 347, 353; *Dorr v. Leippe et al.,* 286 Pa. 17; *Davis v. Hillman,* 288 Pa. 16, 20), for the reason, as stated by Mr. Justice STRONG in *Kellum v. Smith,* 33 Pa. 158, at 165, that "the statute of frauds would be worse than waste paper, if a breach of the promise created a trust in the promisor, which the contract itself was insufficient to raise." Where, however, as here, the relationship between the grantor and grantee, by reason of close kinship or other circumstances, was, of itself, such as to justify the grantor in placing confidence in the belief that the grantee would keep the faith reposed in him, *and,* this relationship was clearly the inducement to the grant, the rule is otherwise. In such instances, there is more than the mere breach of an oral agreement; these cases involve, as Mr. Justice CARDOZO pointed out in the leading case of *Sinclair v. Purdy,* 235 N. Y. 245, quoting from *Wood v. Rabe,* 96 N. Y. 414, "a confidence induced, not by the bare promise of another, but by the bare promise and the confidential relation conjoined." So, in *Hatcher v. Hatcher,* 264 Pa. 105, a case involving a conveyance from mother to

son to protect herself from liabilities which she might incur for another son, under an oral agreement to reconvey on demand, this Court said, at 109: "The title procured by the appellant from his mother undoubtedly passed to him by reason of her confidence in him, and, upon his abuse of that confidence, in refusing to reconvey, the property, as part of her estate at the time of her death, passing to the appellees, he converted himself into a trustee ex maleficio. 'The statute which was intended to prevent frauds turns against him as the perpetrator of a fraud': *Sechrist's Appeal,* 66 Pa. 237. The broken agreement or promise of the appellant was made at the time his mother executed the deed to him and was the inducement to its execution; and if he could now profit from his bad faith, the Act of 1856, which is intended to prevent fraud, would itself become the instrument for the perpetration of it. Under the proviso in that act, the unkept promise of the appellant made him a trustee ex maleficio: *McCloskey v. McCloskey,* 205 Pa. 491." And, in *Cameron v. Townsend,* 286 Pa. 393, the following appears, at page 401: "If a confidential relation existed between plaintiff, as promisor, and appellant, as promisee, in relation to the land in controversy, then there is something in the transaction more than is implied in the violation of a parol agreement." See also *Corrigan v. Conway,* 269 Pa. 373, *Grace v. Moll,* 285 Pa. 353; *Dorr v. Leippe* and *Grove v. Kase,* cited supra.

In the Restatement of Trusts, Section 44, the rule is stated as follows: "Where the owner of an interest in land transfers it inter vivos to another in trust for the transferor, but no memorandum properly evidencing the intention to create a trust is signed, and the transferee refuses to perform the trust, the transferee holds the interest upon a constructive trust for the transferor, if (a) the transfer was procured by fraud, duress, undue influence or mistake, *or* (b) the transferee at the time of the transfer was in a confidential relation to the

transferor." And, in Comment (c) thereunder, it is said: "Where the owner of land transfers it inter vivos to another in trust for the transferor, but no memorandum properly evidencing the intention to create a trust is signed, the transferee will be compelled to hold the land upon a constructive trust for the transferor, if the transferee at the time of the transfer was in a confidential relation to the transferor. *This is true even though at the time of the transfer the transferee intended to perform the oral trust, and even though he was not guilty of undue influence or other abuse of his confidential relation to the transferor in procuring the transfer. Such a confidential relation exists not only when there is a fiduciary relation such as exists between attorney and client, trustee and beneficiary, guardian and ward, and the like, but also where, because of family relationship or otherwise, the transferor is in fact accustomed to be guided by the judgment of the transferee or is justified in placing confidence in the belief that the transferee will act in the interest of the transferor."* (Italics supplied.) See also Bogert, Trusts and Trustees, Section 496; Scott, Conveyances Upon Trusts Not Properly Declared, 37 Harv. L. Rev. 653.

However, it is unnecessary to pursue these considerations further, for, Mary Metzger, in her testimony, admits the understanding with the son, at the time of the execution of the reconveyance to her; that she should hold the property, not as absolute owner thereof, but as trustee for him, until his marital difficulties were settled. While her testimony is not entirely consistent, she testified as follows: "Q. Did you tell Elizabeth that Theodore and his wife were having trouble? A. Yes. Q. And maybe it was better that you would take the deed till they got over their trouble? A. Yes. Q. Was that the condition that you took the deed from Theodore? A. Yes. Q. To hold it until his family troubles were fixed up? A. Yes. . . . Q. And she [Elizabeth] knew that was why Theodore had given it [the deed to the

property in dispute] to you, to hold for him until he and his wife fixed up their troubles? A. Yes. . . . Q. Do you think that Theodore would have turned his property over to you if he thought you were going to give it to Elizabeth? A. No, he would not have. He got very angry at me for putting it all in her name." This being true, the Statute of Frauds furnishes no obstacle to the enforcement of the oral trust. "A parol trust becomes valid when in the course of litigation it is confessed by the trustee": *Kauffman et al. v. Kauffman et al.*, 266 Pa. 270, 275. In such a case it is not necessary "to find either fraud or resort to the finding that the defendant is a trustee ex maleficio": *Hamnett v. Monongahela Trust Co.*, 223 Pa. 247, 251. To this same effect see: *Hatcher v. Hatcher,* supra, 110; *Morrish v. Morrish,* 262 Pa. 192, 200; *Dorr v. Leippe,* supra, 23; *Faunce et al. v. McCorkle,* 321 Pa. 116, 119. And, since the daughter knew of the mother's agreement with the son respecting the property in dispute, the subsequent conveyance to her in no way adversely affects the son's rights, for, even a purchaser from a trustee is chargeable with the same trusts as the trustee from whom he purchases with notice of the trust. The rule applies to constructive as well as express trusts: *Cameron v. Peoples' Bank of Maytown,* 297 Pa. 551, 556.

Appellants' remaining contention that the doctrine of "unclean hands" is applicable to bar equitable relief to appellee, on the ground that the purpose of his reconveyance to the mother was to perpetrate a fraud on his wife's marital rights, is likewise without merit. True, a court of equity will not come to the aid of one, who, in the practice of one fraud, has become the victim of another, but will, as was said in *Blystone v. Blystone,* 51 Pa. 373, regard one who has thus been cheated by his own machinery as having cheated himself. See also *Hershey v. Weiting,* 50 Pa. 240; *Gill v. Henry,* 95 Pa. 388; *Simon's Estate,* 20 Pa. Super. Ct. 450. This is, however, clearly not such a case. The evidence easily

572

justifies the finding of the chancellor that there was no purpose to deprive the wife of any interest in property which she might rightfully claim, and nothing appears in the record to indicate that she has been or will be so deprived. On the contrary, the sole purpose of the son's reconveyance to the mother, as the chancellor found, appears to have been the quieting of the mother's fears that the wife could or would in some way jeopardize her right to receive the rents and income from the property in question. Furthermore, the wife, fully cognizant of this purpose, as unimpeached evidence shows, voluntarily joined with the son, her husband, in the reconveyance.

Our review of the record in this case discloses nothing which would warrant a reversal of the decree appealed from.

Decree affirmed. Costs to be paid by appellants.