FLOR RUIZ ET AL., Plaintiffs and Appellees, v. LEONOR RUIZ, Defendant and Appellant.

No. 8367. Argued February 3, 1943.—Decided April 28, 1943.

*Diego E. Ramos* for appellant. *Herminio Miranda* for appellees.

MR. JUSTICE DE JESÚS delivered the opinion of the court.

Valentín Sánchez and Emilia Ruiz Rivera lived in concubinage until the death of the latter. Five children were born of this relationship: the four plaintiffs and the defendant. By deed of February 26, 1919, executed before Notary Gustavo Zeno Sama, Emilia Ruiz, with her own money, purchased from Alberto Gandía a farm containing 9.23 acres (*cuerdas*), located in the ward of Campo Alegre, Hatillo. On October 6, 1923, Emilia Ruiz executed and delivered a promissory note for the amount of $3,000 to Valentín Sánchez, or order, to be paid on October 7, 1925, which note was authenticated by affidavit number 1877 before Notary Gustavo Zeno Sama. Said note was endorsed by Valentín Sán-

chez to José Darder. Emilia Ruiz died in 1938, and her five children were declared her sole and universal heirs by decree of the court below of May 9, 1930. Thereafter, José Darder instituted suit against them to collect said note, and as a consequence of the same the farm was adjudicated to him in satisfaction of judgment. Valentín Sánchez, who was then sick, decided to purchase this same farm for his children. From the evidence, it does not appear with certainty how the transaction between Valentín Sánchez and José Darder was celebrated. Both died long before the commencement of the present suit and therefore we do not have the benefit of their testimony. But it clearly appears that in some manner Valentín Sánchez acquired said farm from José Darder and that upon advice of attorney-at-law Zeno Sama it was agreed between Darder, Valentín Sánchez, and the defendant, that Darder would convey the title directly to the defendant as owner, it being stated in the deed that the vendor had received from the purchaser the amount of $1,000, which was the price fixed, prior to the execution of the deed. It was also agreed before the notary and the witness Rafael Capó, that the defendant, as her brothers would come of age,—they were then under age—would convey to each of them title as co-owner of a fifth of the farm, the defendant keeping for herself co-ownership in the remainder, and the defendant so promised her father. Notwithstanding the fact that the deed of sale was executed in favor of the defendant, the father continued the management of the farm as owner of the same, receiving the refaction from the Central until his death in 1932. All the children continued living on the farm as co-owners. When the oldest reached the age of twenty-one, he required his sister to deliver to him title as co-owner. She refused, advising him that he must wait until all his brothers came of age in order to make a partition at that time. During this period the defendant directed the operations of the farm and received refaction

from the Central for four *cuerdas* on which she had planted sugar cane. All the brothers attained their majority, and the defendant refused to convey to them their co-ownership interests. They went to attorney-at-law Herminio Miranda, who wrote a letter to the defendant claiming the plaintiffs' rights. Then the defendant, for about a year before the complaint in this suit was filed, went to attorney Zeno Sama for advice. This lawyer advised her to avoid the suit with which attorney Miranda had threatened her in representation of her brothers, and she answered that she knew that each one of her brothers owned a fifth of the farm, but that she would convey it to them whenever she pleased. Their co-ownership not having been conveyed to them, the four brothers, appellees, filed the original complaint in this case on March 11, 1940, later filing, pursuant to leave of court, an amended complaint. Such was the plaintiffs' evidence, which the court below believed.

It should be pointed out, however, that the defendant, by her testimony and that of her father-in-law, attempted to prove that the said agreement with her father did not exist; that he was insolvent and that at the time of his death she had him with her at her home because he had been sick for sometime; that the farm was bought by her from Darder, as indicated in the deed; that, of the amount of $1,000 for the purchase, she had saved $500 herself by raising hogs and sewing, and that the remaining $500 was loaned to her by the father of her then fiancee whom she married three years later, that said loan was made without interest and that no document in proof thereof was executed. The father-in-law corroborated the testimony of his daughter-in-law; but cross-examination disclosed that all his capital consisted of a 10.40 *cuerdas* farm and that, in order to obtain the $500 which he loaned to his son's fiancee, he had to sell three cows that he owned and which supplied the milk consumed by his family of 10 children.

Referring to defendant's evidence, the trial judge said:

"The evidence that she introduced during the trial to show how she acquired this farm, is so unconvincing that it strengthens instead of destroys the evidence for the plaintiffs which consisted of the testimony of the notary Gustavo Zeno Sama and Rafael Capó, who have a well-recognized reputation for veracity in the comunity."

Upon this evidence, weighed in this form, the court below entered the judgment appealed from, stating that the plaintiffs and the defendant are co-owners of the farm described in the complaint in the proportion of a fifth undivided interest for each one and ordered that the corresponding entry, in accordance with said judgment, be made in the registry of property. The court did not subject the defendant to the payment of fruits claimed, because there was not enough evidence to sustain the claim, but adjudged that she pay the costs, including $100 for attorney's fees.

The appellant considers the above-described transaction as a gift of real property. Because of this, she alleges that the court should have sustained her demurrer because of insufficiency of facts, and that the judgment is not warranted by the evidence.

The appellant contends that this being a real property gift made by a father to his children, the gift had not only to be made by public instrument, but had to be accepted by the donees before the death of the donor. The trial judge, in an attempt to rebut the defendant's theory, stated in his opinion that this was not a case of a gift of real property, but of personal property, since what was actually done by Valentín Sánchez was to give to his children the money needed for the purchase.

This conclusion is contrary to the evidence, since there is nothing therein that shows a delivery of money. Nevertheless, even if the transaction is considered as a gift of real property, any result other than that reached by the district court would be to allow the defendant to enrich herself unjustly at the expense of the plaintiffs.

The appellant also argued that the theory of agency is not applicable, since the obligation placed by the father on the daughter to transmit the title of co-ownership to the brothers was an act of ownership, and therefore it had to be embodied in a public instrument to this case; but the law, which does not conceive of a wrong without providing a remedy, can not permit the appellant to defraud her brothers by her violation of the trust which her father placed in her by violating the promise made to him—in consideration of which he conveyed the title to her—and by appropriating for herself what the father acquired to be equally divided among all his children. Section 7 of the Civil Code, in its pertinent part, provides that "when there is no statute applicable to the case at issue, the court shall decide in accordance with equity, which means that natural justice, as embodied in the general principles of jurisprudence and in accepted and established usages and customs, shall be taken into consideration." In accordance with this provision, in the case of *Fernández* v. *Laloma,* 56 P.R.R. 348, which dealt with an oral transaction similar in principle to this one, and which, if it had been reduced to public instrument, would have constituted an express trust, we said:

"The case could be decided under section 7 of the Civil Code by taking the rules about resulting or constructive trusts from equity and applying them. In equity jurisdictions a constructive trust arises in cases similar to the one at bar."

In the case of *Foreman* v. *Foreman* (N. Y. 1929) 167 N. E. 428, a house and a lot in the city of New York were conveyed to Edith Foreman. The purchase price was paid by her husband, the plaintiff. There was evidence which tended to prove that the husband had asked her to accept the title in her name, because he wanted to keep his real property separate from the property involved in his business. There was also evidence to the effect that she agreed to make a deed in his favor upon his request to do so, and to manage

the property or the products of the same in accordance with the desires of her husband. After the deed of sale was executed in favor of the wife, the husband collected the rents and made use of them as owner. He paid the taxes, the insurance premiums and the costs of the improvements and repairs, and consistently exercised acts of ownership upon the property. The wife died intestate in 1925, leaving as her heir a child, her only son, to whom the title passed subject to the rights that the New York law recognizes in a widower. The plaintiff filed an action for title to the property, in accordance with said oral trust.

The Court of Appeals, after stating these facts, and through its Chief Justice, Mr. Cardozo, in reversing the appealed judgment, said the following:

"The rule is now settled by repeated judgments of this court that the statute does not obstruct the recognition of a constructive trust affecting an interest in land where a confidential relation would be abused if there were repudiation, without redress, of a trust orally declared. (Citing authorities.) Criticism of the rule as involving a partial repeal of the prohibition of the statute is heard from time to time in commentary and treatise. Whatever force the criticism may have had while the rule was in the making has vanished with the years. By long acquiescence, the exception, if such it be, has wrought itself by construction into the body of the statute as if written there from the beginning. It is not the promise only, nor the breach only, but unjust enrichment under cover of the relation of confidence, which puts the court in motion."

To the same effect, see 2 Restatement of the Law, Trust, p. 140 *et seq.;* 3 Bogert on Trusts, p. 1596; the article of Professor Costigan in 12 Mich. L. Rev. 427; *Metzger* v. *Metzger* (Pa. 1940) 129 A.L.R. 683, and the monographs in 35 A.L.R. 280, 307; 45 Id. 851, 855; 66 Id. 156; 80 Id. 195, 206, and 129 Id. 689, 695.

The fact that the plaintiffs have entitled their action "revendication of co-ownership and payment of fruits" does not forbid us from deciding that in this case there exists a

constructive trust, since this remedy is perfectly compatible with the allegations and the evidence. This was done in *Porrata* v. *Fajardo Sugar Company of P. R.*, 57 P.R.R. 628, where the constructive trust was not mentioned either in the title of the action or in the prayer of the complaint. This court, in order to do justice between the parties, nevertheless declared the existence of such a trust in that case.

█ The appellant alleges as prejudicial error the fact that the plaintiffs were allowed to file the amended complaint in this case because, according to them, in the latter, the cause of action stated in the original complaint was altered. There is no such variance. The cause of action is the same. In the second complaint the manner in which Darder acquired the title is corrected, and this appears accepted in the stipulation subscribed by the parties.

█ Nor has the cause of action prescribed, since the defendant could not acquire by any other prescription save the extraordinary prescription of thirty years, since she lacks good faith, which is one of the indispensable elements for the existence of ordinary prescription.

Although for reasons different from those of the district court, the judgment appealed from is affirmed.