## Lalich *v.* Bankovsky et al., Appellants.

Argued Sept. 25, 1944. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and HUGHES, JJ.

*Frank P. Barnhart,* for appellants.

*Harry Doerr,* for appellee.

OPINION BY MR. JUSTICE LINN, October 31, 1944:

This appeal is from a decree declaring that an undivided half interest in certain premises was held on a constructive trust and requiring conveyance to the plaintiff. The transaction was between the plaintiff and his sister, Mary. The property had been owned by their father, on whose death, February 26, 1941, it passed to them as tenants in common. He left a tract of land containing four acres in West Taylor Township, not involved in this proceeding, and the property in question in the Borough of Franklin, 50 feet on Main Street with a depth of 130 feet, having erected on the Main Street front a three-story frame building containing two store rooms and apartments and, on the rear, two dwelling houses. The father conducted a restaurant and taproom on the premises, lived in part of them and rented rooms to others.

The plaintiff, at the time of the transaction, was 24 years of age and his sister 26. With respect to her, the learned chancellor found: ". . . For several years prior to the death of her father she worked with her father in operating the taproom and restaurant which comprised his business, and had charge of the business on account of the father not being in good health. She was the only one, other than her father, who had access to the safe, and took the checks to the bank on paydays."

She married Michael Bankovsky, defendant, August 28, 1941; she died May 28, 1942, leaving her husband and no children. Her property passed to her husband by her will. Her administrator c. t. a. is also a defendant.

On May 6, 1941, Peter conveyed to Mary all his interest in the Franklin Borough premises and she conveyed to him all her interest in the four-acre tract in West Taylor Township, the value of which, the chancellor found, is ". . . trifling in comparison with the value of the property in Franklin Borough."

Other findings are: "9. Peter Lalich was accustomed to be guided in business affairs by the judgment of his sister, Mary Lalich.

"10. In the early part of May, 1941, Mary Lalich, being fearful that Peter's inexperience in business and his excessive spending habits might result in jeopardizing their ownership of the Franklin property, suggested to Peter that he should convey his undivided one-half interest therein to her, and promised and agreed with Peter that she would hold the undivided one-half interest in trust for him, and also that should the property be sold, the purchase money would be divided between them, share and share alike. The monthly rental value of the real estate, of which the two were owners in common, was $231.00, which rental value included an apartment, the rental value of which was $21.50, and which apartment was then occupied by them and later was occupied by Mary exclusively, and included the rental value of the four acres in West Taylor Township, which value was $30.00. As part of the arrangement Peter was to occupy a store room on the first floor of the Franklin property and collect the rent of another store room on the first floor, as well as the rent from the farm, all of which had a value of $90.00 per month, and Mary was to occupy one apartment and collect the rents from the rest of the premises, all of which had a rental value of $141.00. Peter reposed trust and confidence in Mary, and was always satisfied to follow her advice and suggestions. . . .

"11. Peter Lalich conveyed his undivided one-half interest in the property in controversy to his sister, Mary Lalich, by reason of his trust and confidence in her and upon her agreement that he should enjoy the rental value of a portion of the property and that she would hold the title to the undivided one-half interest in the property in trust for him, and also that in case of a sale of the property she would divide the proceeds with him, share and share alike, and would reconvey his interest to him when he married.

"12. After the execution of the deed on May 6, 1941, and until the death of Mary on the 28th day of May,

1942, the agreement as to the collection of rents was observed, and Mary and Peter each took care of the repairs and improvements to that portion of the building from which each collected the rents."

The question is whether the evidence is sufficient to support the decree. Section 4 of the Act of April 22, 1856, P. L. 532, 33 PS section 2, declares that oral trusts of real property shall be void except where ". . . a trust or confidence shall or may arise or result by implication or construction of law. . ." In *Moffitt v. Moffitt*, 340 Pa. 107, 110, 16 A. 2d 418, Chief Justice SCHAFFER stated the rule to be that "Evidence to support a parol trust must be direct, positive, express, unambiguous and convincing." See also *Jourdan v. Andrews*, 258 Pa. 347, 353, 102 A. 33; *Kirk v. Ford*, 330 Pa. 579, 581, 200 A. 26.

Mr. and Mrs. Hrkman were present when the contract was made. They had occupied an apartment in the house during the life of plaintiff's father and remained a tenant afterward. Peter and Mary, neither being then married, also lived in the house. Mr. Hrkman testified that around the "latter part of April or May 1" he and his wife and Peter and Mary were together. He was asked, "Q. What was said then? A. That was when the agreement was made. Mary was agreed to collect all the rents from the houses in the rear and apartments upstairs where I lived and she lived and the rest of the roomers, and Pete was to have the proceeds of the business, which at that time didn't amount to much, and the rent from the store room; and I asked Mary she was getting the greater amount of rent, maybe two-thirds more, and she said it would offset the farm in Pole Hollow, she was deeding that to Pete, she was unable to go down to run it, and Pete was more able to do so; that was the reason she was getting more rent. Q. Did you learn later from Mary that the deeds had been made? A. Yes. . . . Q. At this meeting in the early part of May, did Peter Lalich have anything to say about this

transaction? A. Yes, he was satisfied with the transaction."

Mrs. Hrkman testified: "Q. Were you present when Pete and Mary were discussing this matter? A. Yes, I was there and my husband too. Q. When was that? A. May 1 or April 30. I can't tell you right exactly the date. Q. What was said between Mary and Pete? A. She told Pete—she said, Pete, you are spending more money, if you keep on going like you do, we won't have anything. She said how about putting it all over to me, I will have it and when you get married, I will turn over to you, or if we sell the property, you get half of that money. Q. What did Pete have to say? A. He just listened to her . . . Q. What did Pete say? A. Pete say, anything you said Mary I do. Pete doesn't say much. Q. Was anything said about the rents? A. Yes, Mary tell me before, you are going to pay me rent. She take rent from all the property up there, and Pete collect the rent from down on the farm and the store, and he had a barroom on the other side. Q. Did you have any conversation with Mary later? A. Yes, she tell me after too, the same thing what she was telling before. She said Pete run around. She said she hopes if he gets married and settle down. She said we have to fix that stuff over again. Q. Did she tell you they did fix it up? A. Yes, she tell me they did fix it. Q. How did she tell you they fixed it? A. She said Pete fix everything over to me, and I turn the farm over to him. That is what she told me. She said she was glad Pete listened to her. Anything she say, she said he listened." No contradictory testimony was offered.

Thereafter Peter collected the rents from part of the property and conducted the restaurant and taproom business; he also paid something in excess of $500 for repairs and improvements and Mary paid some $700 for other repairs and improvements. Peter's receipt of rents was a partial accounting by Mary, the title holder, and

supports the decree. In addition to the evidence of the contract given by the Hrkmans and to the action of the parties just related, there is evidence by a number of other witnesses of corroborative declarations made by Mary. There is evidence that, while not much older than plaintiff, his sister Mary, having been dominant in the conduct of the restaurant and taproom during the father's lifetime, continued after his death to dominate Peter. She did this partly in her own interest, apprehensive that the interests of both might be jeopardized by what she thought was a tendency to extravagance in her brother. He appears to have acquiesced in the desirability of the suggested protective device, and, as his bill and the evidence in support of it shows, he complied with her request. The trust so created is saved by the statute. To protect her undivided interest in their property, she agreed that she would act to protect his interest; she assumed a relation of confidence to which equity will give effect when, as here, the evidence to support it is within the rule: cf. *Metzger v. Metzger*, 338 Pa. 564, 568, 14 A. 2d 285. See, Restatement, Trusts, sec. 44 (1) (b).

Decree affirmed; costs to be paid by appellant Bankovsky.