## FALK v. COMMISSIONER OF INTERNAL REVENUE.

### No. 10380.

United States 'Court of Appeals
Third Circuit.

Argued April 16, 1951.
Decided June 5, 1951.

Louis Caplan, Pittsburgh, Pa. (Charles C. MacLean, Jr., Ray I. Hardin, New York City, on the brief), for petitioner.

Carlton Fox, Washington, D. C. (Theron Lamar Caudle, Asst. Atty. Gen., Ellis N. Slack, A. F. Prescott, Special Assts. to the Atty. Gen., on the brief), for respondent.

Before McLAUGHLIN, STALEY, and HASTIE, Circuit Judges.

McLAUGHLIN, Circuit Judge.

The only issue before us is whether the income of a trust (created by the petitioner's father in 1927) over and above the amounts payable thereunder to petitioner's

sister, is includible in the taxpayer's gross income for the taxable year 1943. The Tax Court held that it was. The taxable year 1942 is involved by reason of the Current Tax Payment Act of 1943, 26 U.S.C.A. Int.Rev.Acts, page 385, which provides that the income and victory tax for the tax year of 1943 depends on the income of the calendar years 1942 and 1943.

Most of the facts are stipulated and the balance are established by the evidence at the Tax Court hearing. Petitioner is forty-eight years old. He was born in Pittsburgh, Pennsylvania. For the last fifteen years he has been active there in philanthropic and community affairs. On November 11, 1927, his father, Leon Falk, executed a deed of trust with himself as donor and his brother, Maurice, as trustee. Leon Falk died October 20, 1928 without having terminated the trust. Maurice Falk served as trustee until his death March 18, 1946. Since that time his successor trustee, Fidelity Trust Company of Pittsburgh, has so served. During the period from the creation of the trust until his death, Leon Falk, as empowered by the deed of trust, directed his brother as trustee to pay from the income of the trust estate a total of $23,250 to certain charitable, benevolent and educational institutions. Those monies were duly paid. From the date of the death of his father to the date of the death of Maurice Falk, it appears that the petitioner, as authorized by the trust, directed certain charitable and philanthropic payments to be made from the trust estate. Those payments were made and, exclusive of certain payments to the University of Pittsburgh, totalled $318,004.31. They were deducted by the trust estate from its gross income during the respective years in which the contributions were made. In 1943 the trust estate paid out a total of $51,318.75 to various charitable, benevolent and educational institutions. All of those payments were at the written direction of petitioner. The amount of the payments was deducted by the trust estate from its 1943 gross income. The Tax Court upheld the Commissioner in determining that the net income of the trust (which excluded certain sums paid petitioner's sister) was to be included in petitioner's income and that the above mentioned disbursements constitute gifts to charity by the petitioner under his voluntary designations.

The governing language of the November 11, 1927 deed of trust is Article Second which provides:

"Second: The Trustee shall pay over the dividends, interest and income from the trust estate, remaining after payment thereout of the expenses of maintenance, taxes or other proper disbursements, as follows:

"1. To Marjorie Falk, the daughter of the Donor, there shall be paid annually in quarterly instalments, as near as may be, such portion of said income as the Donor in his lifetime and Leon Falk, Jr., the son of the Donor, after the death of the Donor, shall from time to time in writing direct; provided, however, that after the death of the Donor the amount so paid shall not be less than Five Thousand Dollars per year. The payments so to be made to said Marjorie Falk shall be made each year until the trust is terminated.

"2. To such charities and benevolences, charitable, benevolent and educational institutions as the Donor in his lifetime, and as Leon Falk, Jr., after the death of the Donor shall, from time to time in writing, designate, there shall be paid such portion of said income as the Donor in his lifetime and Leon Falk, Jr., after the Donor's death shall direct, each year until the trust is terminated.

"3. To Leon Falk, Jr., the son of the Donor, there shall be paid annually all of said income which shall not be paid to said Marjorie Falk and to Charitable, benevolent and educational purposes as aforesaid. The payments so to be made shall be made each year until the termination of the trust."

By Paragraph 3 of the Second Article of the trust, the taxpayer was to receive its annual income less payments of at least $5,000 a year to his sister and less any payments directed by him to be paid to charities and benevolences, charitable, benevolent and educational institutions designated by him in writing in accordance with Paragraph 2 of the Second Article.

There is no language in the article or in the agreement making it mandatory on the taxpayer to give anything to charity, etc. or even to make specific designations of a particular charity. There is not the slightest ambiguity about Article Second. It is impossible to construe Paragraphs 2 and 3 with a reasonable regard for their rational meaning and to arrive at the conclusion that they obligated the taxpayer to designate the type of charity and benevolence as mentioned in Paragraph 2 and to then direct that sums certain be paid them under the trust.

The taxpayer does not possess all of the incidents of ownership but within the exception provided for of disbursements to his sister, he does have practical control of the trust income. As Judge L. Hand said in Stix v. Commissioner, 2 Cir., 152 F.2d 562, 564, "All else he might withhold, and whatever more he chose to give, he gave out of his own." See also Mallinckrodt v. Nunan, 8 Cir., 146 F.2d 1, certiorari denied 324 U.S. 871, 65 S.Ct. 1017, 89 L.Ed. 1426. Under the wording of the trust deed we are unable to find that the petitioner had a duty to designate "charities, benevolences, charitable, benevolent and educational institutions" in writing and to direct specific payments to them of trust income. Such designation and direction was left to the absolute discretion of the petitioner. With the exception of mandatory payments to his sister, he was unfettered in his control of the trust income. This is ample to bring it within his own taxable income under Section 22(a) of the Internal Revenue Code, 26 U.S.C.A. § 22(a). Corliss v. Bowers, 281 U.S. 376, 50 S.Ct. 336, 74 L.Ed. 916; Helvering v. Clifford, 309 U.S. 331, 60 S. Ct. 554, 84 L.Ed. 788; Helvering v. Horst, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75; Helvering v. Eubank, 311 U.S. 122, 61 S. Ct. 149, 85 L.Ed. 81; Harrison v. Schaffner, 312 U.S. 579, 61 S.Ct. 759, 85 L.Ed. 1055; Commissioner v. Tower, 327 U.S. 280, 66 S.Ct. 532, 90 L.Ed. 670; Lusthaus v. Commissioner, 327 U.S. 293, 66 S.Ct. 539, 90 L.Ed. 679; Commissioner v. Sunnen, 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898.

Petitioner relies largely upon our decision in Funk v. Commissioner, 3 Cir., 185 F.2d 127, 131. There, the taxpayer was given the authority in her discretion to pay all or part of the trust income to her husband or herself in accordance with their "needs", of which she was to be the sole judge with the balance of the income, if any, to be added to principal. We held, in Judge Kalodner's fine opinion, 185 F.2d at page 131, that the use of the word "needs" effectively distinguished the case from the Stix and Mallinckrodt opinions, supra, and " * * · * confined the trustee to limits objectively determinable, and any conduct on her part beyond those limits would be unreasonable and a breach of trust; * * *." Also in Funk, if there were no need of the taxpayer or her husband for all or part of the trust income, that income did not go to the taxpayer as in the matter before us, but to the principal of the trust. Plainly, the Funk decision is inapplicable to the instant problem where there is no circumscription of the petitioner's discretion; where he has no obligation under Article Second to make any of the kind of payments referred to in the trust and where if he does not make such payments, the income, less payments to his sister, is his own.

The above conclusion is not contrary to Pennsylvania law. It is, in fact, fortified by a line of opinions cited to us by petitioner, in each of which, though the charitable beneficiaries were not specified by name, the extent of the charitable gift was either certain, or as Judge Kalodner said in the Funk case, was "objectively determinable". Thus what was to go to charity in Re Anderson's Estate, 269 Pa. 535, 537, 112 A. 766, was "said residue" of testator's estate; in Re Thompson's Estate, 282 Pa. 30, 32, 127 A. 446, 447, it was "All the rest, residue and remainder of my estate, real and personal * * *"; in Re Jordan's Estate, 329 Pa. 427, 428, 197 A. 150, it was "a certain part" of her estate; in Re Funk Estate, 353 Pa. 321, 322, 45 A.2d 67, 68,. 163 A.L.R. 780, after certain legacies, it was "After all debts the rest" to be given to some worthy cause or institution. Here

we have no such situation. Nor was there present in any of those cases cited by the taxpayer the other all important element of the matter before us, namely, that in the event petitioner did not designate charities or benevolences as detailed in the agreement and direct payments to them, the income went to him.

Petitioner also argues that a constructive trust should be imposed under the particular facts. This is based, primarily, upon certain statements with respect to the trust made to petitioner by his father and agreed to by petitioner. The testimony of the petitioner concerning these was accepted by the Tax Court. The son testified that the father told him that "He wanted me to carry on his charities * * *. He wanted his current charities carried on and he wanted the family tradition of giving to be continued." Petitioner testified that he promised to carry out the desires that his father indicated. He also stated that his father never expressed in any way a limitation as to the amount of the income from the trust which should go to charities as a whole.

The Tax Court was unable to find in those statements " * * * a purpose to create a charitable fund which the petitioner was legally bound to distribute for charitable purposes". We must agree with that finding. As the Tax Court held, "Neither the trust instrument nor any direction by the grantor has provided for the use of any specific amount of income for any particular charity or even for charity in general". Unquestionably, the donor desired the family tradition of giving carried on and he did make it possible for his son to do this in his own right. But we do not think that either the facts or the law go any further than that.

The Pennsylvania decisions presented by the petitioner are not persuasive to the contrary. In Metzger v. Metzger, 338 Pa. 564, 14 A.2d 285, 129 A.L.R. 683, an equity action to enforce a parol trust in real estate was upheld. The trust concerned specific property and its exact terms were testified to by the trustee in an adversary proceeding. Lalich v. Bankovsky, 350 Pa. 441, 39 A.2d 514, also had to do with an oral real property trust. The evidence established an affirmative oral trust dealing with designated property. The court there followed, 350 Pa. at page 444, 39 A.2d at page 516, the rule for such a trust as stated by Chief Justice Shaffer in Moffitt v. Moffitt, 340 Pa. 107, 110, 16 A.2d 418, 419, that "Evidence to support a parol trust must be direct, positive, express, unambiguous and convincing." That principle was followed in Re Brenneman's Estate, 360 Pa. 558, 563, 63 A.2d 59, which was also cited by petitioner. It is true that real property was involved in the Moffitt case but the quality of proof needed in Pennsylvania to support a parol trust of personalty is substantially the same as is required for real property. In Danner v. Danner, 366 Pa. 178, 180, 77 A.2d 217, 218, a parol trust of personal property was before the court. Chief Justice Drew held that "It is axiomatic that to prove a trust by parol the evidence must be clear, precise and indubitable." See also In re Washington's Estate, 220 Pa. 204, 205, 69 A. 747; Rocks v. Sheppard, 302 Pa. 46, 50, 152 A. 754; and In re Williams' Estate, 349 Pa. 568, 570, 37 A.2d 584, which decisions all had to do with parol personal property trusts.

Under the Pennsylvania decisions we certainly would have no justification to hold that the Tax Court was clearly wrong as a matter of law in concluding that there exists no such constructive trust as is claimed. Examination of the trust instrument makes it plain that it was carefully prepared by a skilled legal draftsman. As the court below found, "Had it been the intention and purpose of the donor that any definite portion of the income of the trust be contributed to charity, it would have been a simple matter to so provide, and petitioner admits that the donor never expressed a desire or gave a direction to him to distribute any definite amount." It should be noted that, in providing for his daughter, the donor left no possible doubt as to his intention. He designated her by name and clearly stated that she was to be paid not "less than Five Thousand Dollars per year."

The next point urged by petitioner is that the Tax Court erred in disregard-

ing the construction placed on, the deed of trust by the Orphans' Court of Allegheny County, Pennsylvania, in the audit proceedings held on the final accounting of the trustee of the 1927 trust.

After the death of the trustee, Maurice Falk, his final account as trustee under the deed of trust here involved was filed in the Allegheny County Orphans' Court. An order of that Court in that proceeding, dated September 18, 1946, stated that the petitioner "is required to exercise a reasonable, fair and legal discretion in carrying out the provisions of the said Section 2 of Article Second of. the said deed of trust and his exercise of such discretion is subject to supervision and review by this court." The order also stated that the deceased trustee "was required to exercise reasonable care to assure the proper performance by the said Leon Falk Jr., of the latter's duties under the said Section 2 of Article Second of said deed of trust." The order appointed Arthur W. Scully trustee ad litem to represent the interests of all charitable, benevolent and educational institutions under the provisions of the deed of trust at the audit of such account. The Maurice Falk account on which the above order was based was filed *after* the Commissioner had questioned the taxability of the distributions by petitioner to charitable and educational institutions. The Commissioner was not a party to the accounting. The Tax Court held that there was no evidence that the Orphans' Court "was advised that a construction of the trust instrument contrary to that set out in the decree had been made by the Government and a substantial tax liability proposed against the petitioner on the basis of such construction." The Tax Court also found, and the finding is not questioned, that "Although the petition for the appointment of a trustee ad litem and the order of the court are separate documents, it is clear that the decree was prepared together with the application for appointment." The Tax Court held that the Orphans' Court accounting "was not an adverse proceeding and the construction of the trust recited in the order appointing the trustee is not binding upon us in the de-

termination of the petitioner's tax liability with respect to the income of the trust."

The record abundantly supports this conclusion of the Tax Court. Cf. Loggie v. Thomas, 5 Cir., 152 F.2d 636; Thomas Flexible Coupling Co. v. Commissioner, 3 Cir., 158 F.2d 828, certiorari denied 329 U.S. 810, 67 S.Ct. 624, 91 L.Ed. 691. The fact that it was not an adverse proceeding highlights the basic proposition that this is a question of federal income tax law. Under the circumstances here present, the county orphans' court cannot, as Mr. Justice Black said in Commissioner v. Tower, 327 U.S. 280, 288, 66 S.Ct. 532, 536, 90 L.Ed. 670, " * * * decide issues of federal tax law and thus hamper the effective enforcement of a valid federal tax levied against earned income."

There is no merit in petitioner's final point and it need not be discussed.

The decision of the Tax Court will be affirmed.